# IN THE COURT OF APPEALS OF IOWA

No. 20-0642
Filed March 3, 2021

**KRISTIN ANN SPAULDING, n/k/a KRISTIN ANN SMITH,**
Plaintiff-Appellee,

**vs.**

**KURTIS EDWARD GLENN,**
Defendant-Appellant.

_____

Appeal from the Iowa District Court for Wapello County, Gregory G. Milani, Judge.

A father appeals an order denying his request to modify the physical-care provisions of a custody decree concerning his son and granting the mother's request to modify the visitation provisions. **REVERSED, MODIFIED, AND REMANDED.**

Bryan J. Goldsmith and Carly M. Schomaker of Gaumer, Emanuel, Carpenter & Goldsmith, P.C., Ottumwa, for appellant.

Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West Des Moines, for appellee.

Considered by Vaitheswaran, P.J., and Tabor and Ahlers, JJ.

**TABOR, Judge.**

The district court commended Kurtis Glenn and Kristin Smith as "good parents who want the best for their child and who want to spend the most time that they can with him." This appeal involves the physical care of their nine-year-old son, M.G., who lived with Kurtis and had every-other weekend visitation with Kristin since 2015. The district court refused Kurtis's request to modify the physical-care provision in the parents' stipulated decree. The court instead granted Kristin's request to modify the visitation provision. Kurtis challenges both aspects of the modification order.

Despite the reference to "joint physical custody" in their stipulated decree, Kurtis and Kristin never adopted a shared-care arrangement even approaching equal parenting time. *See generally In re Marriage of Hynick*, 727 N.W.2d 575, 579 (Iowa 2007) ("Joint physical care anticipates that parents will have equal, or roughly equal, residential time with the child."). Kurtis contends the court should have modified the decree to align with the reality of their routine. As a change in circumstances, Kurtis urges, "the joint physical care relationship between the parties has broken down, or, more accurately, never even started."

We agree with the court's sentiment that both Kurtis and Kristin are good parents who now want to maximize their time with M.G. But we also agree with Kurtis that maintaining the physical-care schedule the parents followed for nearly five years serves M.G.'s best interests. To restore that established routine, we reverse the modification order and amend the decree to place physical care with Kurtis and award liberal visitation to Kristin. We remand for the district court to calculate Kristin's child support obligation.

## I.      Facts and Prior Proceedings

M.G. was born in 2011.  Three years later, his mother, Kristin, petitioned for a custody order.  After mediation, the parents entered a stipulation on custody and visitation.  That stipulation was not a model of clarity.[1]  In it, the parents agreed to "joint legal and joint physical custody" of M.G.  What that phrase meant to the parties was clarified in the section on visitation:

> When the minor child is in school—The Petitioner shall have visitation from Friday at 5:30 p.m. to Sunday at 6:00 p.m. unless it is a three-day weekend.  Then Kristin would get the extra day if it fell on her weekend.  The Petitioner would also have the minor child on Wednesday evenings from 5:30 p.m. to 8:00 p.m.
> Prior to the child attending school—The Petitioner would have visitation every other week from Friday at 5:30 p.m. until Wednesday at 8:00 p.m. on the week Petitioner does not have weekend visitation.[2]

The stipulation also stated that neither parent would pay child support for M.G. to the other parent.[3]  The district court approved the stipulated decree in May 2015.

Three and one-half years later, Kristin petitioned to modify the decree on custody.  She alleged that since May 2015 there had been "a change in circumstances warranting a modification of the parties' respective parenting time

---

[1] More colorfully, in overruling Kristin's application for contempt, the district court called the stipulation's relevant language "in current parlance, a hot mess."

[2] M.G. was four years old when his parents entered this stipulation.  He started school the next year.

[3] In fact, avoiding a child-support obligation for Kristin was the reason that the stipulated decree used the term "joint physical custody," according to Kurtis's testimony at the modification hearing.  He testified he was never interested in having Kristin pay support.  If the stipulation truly envisioned a joint physical care arrangement, child support should have been calculated under the offset method in the child support guidelines.  See In re Seay, 746 N.W.2d 833, 835 (Iowa 2008) ("In Iowa, we have adopted a rule which requires application of the offset method for calculating child support in cases involving joint physical care.") (citing Iowa Ct. R. 9.14)).

with [M.G.]." In his answer, Kurtis asserted the title of "joint physical care" was "in name only," and he had "served as the primary parent" for M.G. Kurtis counterclaimed that changed circumstances warranted modifying the decree to name him as the physical care provider. He also argued the existing visitation provisions were appropriate. Plus, Kurtis asked the court to modify child support consistent with the Iowa Child Support Guidelines or as otherwise appropriate under the facts of the case. The court set the parents' modification requests for hearing in January 2020.

Meanwhile, Kristin sought to hold Kurtis in contempt of the decree. Now that M.G. was in school, she alleged the stipulated schedule provided her visitation every weekend, not every other weekend. Kurtis resisted, denying the parties intended that interpretation. The district court declined to hold Kurtis in contempt. The court reasoned that despite the stipulation's "confusing" language, until recently "the parties did not seem to have any confusion about the visitation arrangement and, whether the child had started school or not, proceeded with an every other weekend visitation schedule for approximately four years without much dispute."

At the modification hearing, Kristin described her current situation. She was thirty-two years old, married in 2018, and lived in Knoxville. She worked as an office manager in her husband's family business. Their household included their two-year-old child in common, Kristin's twelve-year-old child from another relationship, and her husband's eight-year-old child from another relationship. Kristin testified the children all enjoyed each other's company. They

lived about thirty-five miles from Eddyville, where M.G. lived with Kurtis and attended school.

Similarly, Kurtis provided the court with his biographical information. He was thirty-six years old and had worked at Pella Corporation for fifteen years. He lived with his girlfriend[4] and his thirteen-year-old daughter from a prior relationship, along with M.G. He described the half-siblings as "very close, they do almost everything together." Kurtis's mother lived three blocks away and often pitched in to help care for her grandchildren.

As for M.G., it was undisputed that he was a happy, active, and well-adjusted child. His family and teachers described him as outgoing and courteous.

Against that factual backdrop, Kristin asked to modify her every-other-weekend visitation to "week-on-week-off" parenting time. As a change in circumstances, she asserted that Kurtis refused to provide her with any extra time with M.G. She alleged he grew less willing to reschedule visitation when he started living with a new girlfriend. She also alleged that Kurtis did not inform her about M.G.'s school work, extracurricular activities, or medical care. She summarized the problem she had communicating with Kurtis:

> I think he just kind of has it in his head that since he's got the majority of the time, now he's the primary. So decisions are made without my opinion or my input at all, and then I am just, going by this schedule again, not allowed any extra time for anything.

For his part, Kurtis testified that despite the designation of "joint physical custody" in the stipulation, in reality he had been responsible for M.G.'s care since

---

[4] Kurtis had a different live-in girlfriend in 2016.

2015.[5] He insisted nothing had changed in the last five years that called for overhauling their parenting schedule. He asked the court to modify the decree so that it would reflect his actual role as the physical-care parent.

After hearing testimony, the court ruled that "Kurtis has not met the heavy burden required to modify custody." Yet the court also held "the evidence presented by both parties clearly establishes that there has been a substantial change in circumstances since the previous order, to warrant a modification of the parties' respective care periods to make them more specific and understandable by the parties." As its bottom line, the court denied Kurtis's request to modify the physical-care provision and granted Kristin's request to modify visitation. The court directed the parties to begin alternate weeks of parenting time. The court noted that the parties provided child-support worksheets, and "[t]here was no serious disagreement as to the amount of child support that Kurtis would owe to Kristin." But the court adjusted Kurtis's obligation down to zero dollars.

Kurtis appeals the modification order.

## II.     Legal Principles and Scope of Review

Because the parents were never married to each other, Iowa Code chapter 600B (2019) governs this modification appeal. We apply the same legal framework to custody and visitation matters involving unmarried parents as we do

---

[5] Kurtis testified that he was the point person for M.G.'s schooling. That fact was verified by M.G.'s preschool and kindergarten teachers, who both testified that they never met Kristin during those school years. Kristin did not start attending parent-teacher conferences until M.G. was in the second grade. Kurtis also handled M.G.'s medical and dental appointments. Kristin said she was not involved because Kurtis did not tell her about most of the appointments.

to those issues arising between parents who had been married. *See* Iowa Code § 600B.40 (cross-referencing section 598.41).

Custody proceedings between unmarried parties are in equity; so our review is de novo. *See Phillips v. Davis-Spurling*, 541 N.W.2d 846, 847 (Iowa 1995). We give weight to the district court's fact findings, especially as to witness credibility, but those findings do not mandate our result. *Christy v. Lenz*, 878 N.W.2d 461, 464 (Iowa Ct. App. 2016). Our "first and foremost consideration" is M.G.'s best interest. *See In re Marriage of Weidner*, 338 N.W.2d 351, 356 (Iowa 1983). Applying the best-interest standard allows us "the flexibility necessary to consider unique custody issues on a case-by-case basis." *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015).

"Courts are empowered to modify the custodial terms of a paternity decree only when there has been a substantial change in circumstances since the time of the decree, not contemplated by the court when the decree was entered, which was more or less permanent, and relates to the welfare of the child." *Melchiori v. Kooi*, 644 N.W.2d 365, 368 (Iowa Ct. App. 2002). Courts require a "much less extensive change in circumstances" to modify a visitation schedule. *Christy*, 878 N.W.2d at 464.

### III. Analysis

### A. Physical Care

Kurtis argues the district court's refusal to award him physical care was contrary to law and the evidence presented at the modification hearing. He cites *Hynick*, 727 N.W.2d at 579, for the proposition that joint physical care contemplates that the parents have equal involvement in a child's life. By contrast,

the stipulated decree imposed a physical-care arrangement where Kurtis filled the primary role and Kristin had visitation, essentially every other weekend.[6]  In lobbying for modification, Kurtis identifies the fact that a shared-care relationship never came to fruition as a substantial change in circumstances since the decree.  *See In re Marriage of Harris*, 877 N.W.2d 434, 441 (Iowa 2016) (explaining that because "shared physical care provisions [had not] evolved as envisioned" children would "benefit from a modification that designates a primary physical caregiver").  As a next step, he alleges he would be the better parent to provide everyday support for M.G.  *See Melchiori*, 644 N.W.2d at 368 (clarifying that when parents are "on equal footing" in a joint-physical-care modification case, the question is which parent can render "better" care).

In rejecting Kurtis's position, the district court highlighted this core concept: the party seeking modification has a heavy burden because once custody of a child "has been fixed it should be disturbed only for the most cogent reasons." *See In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983).  After citing *Frederici*, the court decided Kurtis failed to meet that "heavy burden" to modify custody.  Yet the court held that Kristin met her burden to modify the visitation provision, replacing it with a fifty-fifty shared-care schedule.

---

[6] In *Hynick*, 727 N.W.2d at 579, our supreme court explained that when the district court chooses one parent to be the primary caretaker and awards the other parent visitation rights, the decree has rejected joint physical care.  Here, the stipulated decree provided Kristin with "visitation" rights inconsistent with its reference to "joint physical custody."

Given these unique facts, the court's modification ruling turns *Frederici* on its head. The stipulated decree fixed M.G.'s physical care with Kurtis.[7] It was so fixed for nearly five years. Thus, Kristin bore the heavy burden to show cogent reasons for switching M.G. to a schedule where he would transfer between his parents' homes on an alternating-week schedule.[8]

What did Kristin assert as a change in circumstances? The parties disagree. Kurtis argues that she offered three developments: (1) she was now able to transport M.G. to his school (roughly a half-hour drive from her home); (2) she did not receive more visitation time than set out in the stipulated decree; and (3) Kurtis did not share information with her about M.G.'s activities. Kristin claims that list is an oversimplification. Yet on appeal, she evokes an even simpler

---

[7] Kristin suggests that Kurtis seeks modification based on an issue that he created. *See Nicolou v. Clements*, 516 N.W.2d 905, 906 (Iowa Ct. App. 1994) (holding custodial parent who instilled anxieties in child toward noncustodial parent may not use those anxieties as justification to block visitation). The district court also cautioned that Kurtis should not "heavy-handedly impose a visitation schedule and then use it to modify physical custody." We see little similarity between this case and *Nicolou*. True, Kurtis could have been less rigid in enforcing Kristin's visitation times. But both parents entered the stipulation setting out those times. The district court's own findings reject any notion of "underhanded tactics" by Kurtis:

> The Stipulation and Decree was entered on May 26, 2015, and Kristin saw M.G. on a regular basis without any significant issues until shortly before [filing her modification petition]. During this time period Kristin was happy to let Kurtis do the day-to-day parenting, including signing M.G. up for school and taking him to doctor appointments. Kurtis on the other hand was willing to do these things, with the assistance of his family and live-in girlfriends.

[8] The district court framed Kristin's action as a request to modify visitation, requiring less extensive change than a request to modify custody. We disagree with the court's framing. Kristin was exercising liberal visitation under the stipulated decree and then sought to have fifty-fifty shared care. That request to alter the custody arrangement required her to prove a substantial change in circumstances.

description of the alleged changes: "Kurt's controlling behavior combined with Kristin's great parenting."

Her opinions about the parties' personal characteristics, in our view, are not new circumstances arising since the decree outside the court's contemplation when it accepted the parties' stipulation. Thus, she cannot satisfy her heavy burden to show modification of the physical-care arrangement is warranted. Because Kristin failed to carry her burden, we reverse the district court's modification order.[9]

Even if the record did reveal a substantial change in circumstances, joint physical care would not be in M.G.'s best interests. The propriety of joint physical care turns on four key considerations: (1) stability and continuity of caregiving; (2) the parents' ability to communicate and show mutual respect; (3) the level of conflict between the parents; and (4) how similar their approaches are to daily parenting matters. *In re Marriage of Hansen*, 733 N.W.2d 683, 696–99 (Iowa 2007). The first three factors weigh against joint physical care for M.G.[10] First, Kristin does not contest that Kurtis has been the primary custodian. Nor does she seriously dispute the quality of care. "[W]here one spouse has been the primary caregiver, the likelihood that joint physical care may be disruptive on the emotional development of the child[ ] increases." *Id.* at 698. At this point in his

---

[9] We acknowledge that the district court found Kristin's testimony to be more credible than Kurtis's evidence. Generally, we defer to such first-hand credibility determinations. *See Christy*, 878 N.W.2d at 464. But here, it is not the facts in dispute so much as the legal conclusions to draw from them.

[10] On the fourth factor, we agree with the district court's finding that the parents generally embrace the same approach to parenting.

development, considering his school work and expanding extracurricular activities, switching to a fifty-fifty schedule would not be in M.G.'s best interests.

On the second and third factors, Kristin testified that she and Kurtis did not communicate or "co-parent" very well. Such discord undermines the success of joint physical care. *See Harris*, 877 N.W.2d at 441. When asked why she believed that shared care would be in M.G.'s best interests, despite the disharmony between her and Kurtis, Kristin replied: "It's equal. It's fair." But "[p]hysical care issues are not to be resolved based upon perceived fairness to the *spouses*, but primarily upon what is best for the *child*." *Hansen*, 733 N.W.2d at 695. Contrary to Kristin's reasoning, establishing a shared-care schedule is unlikely to alleviate conflict between the parents. Rather, it will take more concentrated cooperation, which appears out of reach for Kristin and Kurtis.

After our de novo review of the record, we reverse the decision of the district court and modify the decree to award Kurtis physical care of the child. By all accounts, M.G. has thrived in his care. And "successful caregiving by one spouse in the past is a strong predictor that future care of the child[ ] will be of the same quality." *Id.* at 697. We adopt the following visitation provisions proposed in Kurtis's request for relief.

**During the School Year**

> A. Every other weekend from Friday at 5:30 p.m. to Sunday at 6 p.m. In the event that there is no school scheduled on the Friday immediately before Kristin's scheduled weekend, Kristin shall have visitation with the child beginning Thursday at 5:30 p.m. In the event that there is no school scheduled on the Monday immediately following Kristin's weekend, Kristin shall have visitation with the child until Monday at 6 p.m. For purposes of these three-day weekends, snow days, early outs, or other unplanned school cancellation days

will not be considered to constitute a day in which school is not scheduled.

B.     Every other Wednesday evening from 5:30 p.m. to 8:00 p.m.

C.     Such other visitation as the parties may agree.

### During the Summer

A.     Every other week from Friday at 5:30 p.m. to Wednesday at 8 p.m.

B.     On the alternating week, Wednesday evening from 5:30 p.m. to 8:00 p.m.

C.     Such other visitation as the parties may agree.

The parties shall follow the holiday visitation schedule incorporated in their stipulated decree. That schedule is modified to include the alternating holiday of "Beggars Night" as described in the district court's amended order of March 9, 2020. The alternating-year visitation on M.G.'s birthday shall be from 9:00 a.m. until 6:00 p.m. This modified schedule shall commence the first full week following issuance of procedendo following this appeal.

### B.     Child Support

Because we reverse the modification order and grant Kurtis's request for physical care, the question of Kristin's obligation to pay child support arises. Yet the parties do not address child support on appeal. We thus remand for the court to determine Kristin's obligation based on the child support guidelines.

### C.     Appellate Attorney Fees

Kristin asks for appellate attorney fees. Because she was unsuccessful in defending the modification order, we deny that request. *See* Iowa Code § 600B.26 (allowing award of reasonable attorney fees to prevailing party).

**REVERSED, MODIFIED, AND REMANDED.**