# IN THE COURT OF APPEALS OF IOWA

No. 15-0350
Filed February 24, 2016

**IAN GREGORY CHRISTY,**
      Petitioner-Appellee,

**vs.**

**ABBEY SUE LENZ, n/k/a**
**ABBEY SUE BRO,**
      Respondent-Appellant.
_____

Appeal from the Iowa District Court for Jasper County, Richard B. Clogg,

Judge.


A mother appeals the district court's modification of the visitation, legal

custody, and child support provisions of a paternity decree. **AFFIRMED.**



Eric Borseth of Borseth Law Office, Altoona, for appellant.

Andrew B. Howie of Hudson, Mallaney, Shindler & Anderson, P.C., West

Des Moines, for appellee.



Heard by Danilson, C.J., and Mullins and McDonald, JJ.

**MULLINS, Judge.**

Abbey Sue Lenz, now known as Abbey Sue Bro, appeals the district court's modification decision that altered the visitation, legal custody, and child support provisions of the paternity decree. Abbey asserts (1) the district court erred in finding a change of circumstances exists to justify the modification of visitation and legal custody; (2) the father, Ian Christy's, proposed visitation schedule and proposed language for the legal custody provision are not in the child's best interest; (3) the court should not have changed the parent responsible for carrying health insurance for the child to Ian; and (4) the child support ordered by the district court does not follow the guidelines. Abbey also asserts the court abused its discretion in denying her request for trial attorney fees, and she requests an award of appellate attorney fees. Ian defends the actions taken by the district court and also requests an award of appellate attorney fees. Having considered the claims made on appeal, we affirm the district court's modification decision and award Ian $2000 in appellate attorney fees.

**I. Background Facts and Proceedings.**

Ian and Abbey are the parents of a six-year-old child. In 2009, the court entered an original paternity decree, placing the child in Abbey's care subject to Ian's visitation, granting the parties joint legal custody, ordering child support, and directing Abbey to provide health insurance for the child with an additional monthly payment from Ian for cash medical support. At that time both Abbey and Ian were attending school and were minimally employed. Since the decree was

entered, Abbey has married, changed jobs, moved residences, and given birth to another child. Ian has graduated college, moved residences, gotten engaged, and become employed full time with a job that provides health benefits.

Ian filed a petition to modify the prior decree's child support amount, the visitation schedule, the language of the legal custody provision, and the health insurance requirement. While Abbey agreed some minor changes should be made, she otherwise objected to the modification action. After hearing from both parties, the court granted Ian's modification petition, expanding Ian's time with the child during weekly visitation, modifying the holiday visitation schedule, granting an additional week of summer visitation, ordering Ian to provide health insurance for the child, increasing the child support amount, and denying both parties' request for trial attorney fees. From this order, Abbey appeals.

## II.  Scope and Standard of Review.

Our review of a modification proceeding is de novo in light of the fact the case was heard in equity. *In re Marriage of Brown*, 778 N.W.2d 47, 50 (Iowa Ct. App. 2009). "We therefore give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, but are not bound by them." *Id.* We give deference "because the trial court has a firsthand opportunity to hear the evidence and view the witnesses." *Id.*

## III.  Change in Circumstances.

Abbey first asserts there was not a change in circumstances sufficient to justify the change in the visitation schedule or in the language of the legal custody provision of the original decree. She maintains the current

circumstances were anticipated and planned for in the original decree, and therefore, Ian failed to satisfy his burden of proof in the modification action.

As Ian sought the modification of the visitation schedule, he "must establish by a preponderance of evidence that there has been a material change in circumstances since the decree and that the requested change in visitation is in the best interests of the children." *In re Marriage of Salmon*, 519 N.W.2d 94, 95–96 (Iowa Ct. App. 1994). "[A] much less extensive change in circumstances is generally required in visitation cases" than the change necessary to modify child custody. *Id.* at 96. "The rationale for this lower standard is found in the prevailing principle that the best interests of children are ordinarily fostered by a continuing association with the noncustodial parent." *Id.*

The visitation provision of the paternity decree provided for expanded visitation as the child entered school. However, what was not anticipated when the original decree was entered was Abbey's refusal to accommodate Ian's reasonable requests for minor departures from the terms of the decree along with her inability to communicate important information regarding the child to Ian. Abbey refused to accommodate Ian's request to switch weekends in May 2014 so that the child could attend Ian's college graduation and Ian's brother's wedding, despite the fact Ian asked for the accommodation months in advance. When asked about the reason she refused to accommodate the request for Ian's graduation, Abbey testified she originally agreed Ian could have the child for a few hours that Saturday, but she refused to permit the visit at all when Ian would not switch with her the day that she wanted. As to Ian's brother's wedding,

Abbey testified it was over Memorial Day weekend and she had "plans," although she could not remember what those plans were at the time of the trial. The child originally was to participate in the wedding but was denied that opportunity. It is unclear why the parties could not have switched the weekend visitations in May of that year.

In addition, when visitations were cut short due to weather, Abbey refused to cooperate to permit Ian to make up the missing time with the child. Abbey denied any requests for extra time. Finally, the evidence established Abbey manipulated the summer visitation schedule to maximize the time the child was away from Ian.

While Abbey claims there has not been a material change in circumstances to justify the visitation modification, she admitted "some adjustments" in the schedule would be beneficial to the child. Her proposed "adjustment" would be to eliminate the midweek visit, which would result in Ian not seeing the child for nearly two weeks. Abbey conceded she would not like to have this schedule imposed on her and agreed the child would not like her proposed schedule either.

We agree with the district court's decision to modify the visitation schedule in light of the change in circumstances brought about by Abbey's refusal to be flexible in accommodating Ian's reasonable requests for minor alterations to the schedule. The change made by the district court increases Ian's time with the child and furthers our "prevailing principle that the best interests of children are ordinarily fostered by a continuing association with the noncustodial parent." *See*

*id.* Notwithstanding the new visitation schedule—with all its detail—we encourage the parties to consider the best interests of the child and be flexible in adjusting visitation times to accommodate special events.

Abbey likewise maintains there was not a substantial change in circumstances sufficient to justify modifying the language in the joint custody provision of the original decree. *See Brown*, 778 N.W.2d at 51 ("The custodial terms of a dissolution decree may be modified only when there has been a substantial change in circumstances . . . ."). While Abbey asserts the higher burden of proof is applicable to Ian's request to modify the language in the joint custody provision, Ian did not seek to change who would be the child's custodial parent. Instead, he merely sought for the court to further clarify and define what the court meant in the original decree when it awarded the parties joint legal custody. A party need not demonstrate a change in circumstances when the party seeks only to clarify the terms of the dissolution decree. *See In re Marriage of Russell*, 559 N.W.2d 636, 637 (Iowa Ct. App. 1996) ("A decree for dissolution of marriage is susceptible to interpretation in the same manner as other instruments."); *see also Orvedal v. Orvedal*, 669 N.W.2d 89, 91–92 (N.D. 2003) ("When a divorce decree fails to specify some particulars, and uncertainties in the decree arise from subsequent events, clarification of the decree is often appropriate."); *Lassiter v. Lassiter*, Nos. C-020494, C-020370, C-020128, 2003 WL 21034193, at *2 (Ohio Ct. App. May 9, 2003) (noting the parent was not seeking a modification but rather a clarification of the decree and so the parent did not have the burden to show a change in circumstances); *Rivard v. Rivard*,

451 P.2d 677, 679 (Wash. 1969) (noting a modification occurs when visitation rights are extended or reduced but a clarification of the decree "is merely a definition of the rights which have already been given and those rights may be completely spelled out if necessary" and a party need not show a change in circumstances to obtain a "clarification" of the decree).  We thus conclude Ian need not show a change in circumstances, material or substantial, in order for the district court to clarify the terms of the joint legal custody provision of the paternity decree.

The original decree provided:

> CUSTODY:  The parties will share joint legal custody of [the child].  Joint legal custody means an award of the rights of legal custody of a minor child to a parent under which a parent has legal custodial rights and responsibilities toward the child.  The rights and responsibilities of legal custody include, but are not limited to, decision making effecting the child's legal status, medical care, education, extra-curricular activities, and religious instruction.

Ian testified Abbey does not provide him with the needed information regarding the child, has given him untimely information, and has given him misinformation as well.  Ian was not informed the child had started preschool for several months and did not know which preschool the child was attending until he called various preschools in town to locate the correct one.  When he did make contact with the correct preschool, the school had no record of Ian as the child's father.  Ian was not promptly provided notice of events and activities that were taking place at the preschool.  It was not until a week before the child started kindergarten that Abbey informed Ian of the school the child would be attending, and she did not provide Ian with the child's teacher's information.

Ian was not made aware that Abbey was moving the child to live in another town until the day of the move when she directed him to drop off the child at the new address following his visitation. Ian testified he has been informed of only one doctor's appointment for the child since the child was born—the child's six-month check-up—and Abbey gave him the wrong time to meet at the doctor's office.

Abbey disputes this testimony, claiming she has informed Ian of all of the child's medical appointments and medications by leaving messages on his voice mail or sending him text messages. She admitted to providing Ian no information regarding the school activities for the child because she claimed Ian told her he would be obtaining that information directly from the school.

Ian testified that laying out the obligations of a joint legal custodian in more detail would help the parties understand what it means and would provide the parties direction as to what information must be provided. The new joint legal custody provision provides:

> Joint Legal custody means the following:
> a. Both parties shall have legal access to information concerning the children including, but not limited to, medical, educational, and law enforcement records.
> b. Both parties shall participate equally in the rights and responsibilities of legal custodians including, but not limited to, decisions affecting the children's legal status, medical care, education, extracurricular activities, and religious training.
> Specific discussion and agreement involving medical matters include, but are not limited to, both parents providing notice and an opportunity for discussion to be involved in all medical treatment of the minor children. Both parties will be notified of all pre-planned appointments as soon thereafter as the appointment is made. Both parties will be notified of any emergency medical needs as soon as possible.

Involvement in educational matters will include notice and an opportunity to consult and discuss all matters of educational interest. Both parties will be notified by the other of school conferences, programs, open houses, and other school sponsored events and programs. The primary care parent will provide the non-physical care parent with a calendar of events and copies of all notices, report cards, and other progress reports from the school.

Involving extracurricular activities, the parties will notice each other and provide an opportunity for discussion and consulting in enrollment and participation of all extracurricular activities.

c. As a general rule, both parties will be named on all legal notices, including school, medical, and extracurricular activities wherein it is required to note a parent or other individual as a person to notice in the event of an emergency. Such notice will include their name, address, and telephone number.

In light of Abbey's admitted failure to provide Ian with information concerning the child's medical and educational well-being, we agree the district court was justified in providing a more detailed definition of the parties' obligations as joint legal custodians.

**IV. Best Interests of the Child.**

Next, Abbey claims the changes made to the visitation schedule are not in the child's best interests. She contends the new schedule is complicated, contradictory, and results in constant modifications, which will result in the child feeling confused and unstable.[1] Upon our review of the new visitation schedule, we do not see its complexity or contradictory nature. Abbey claims the new holiday schedule complicates the entire visitation routine and creates a conflict

---

[1] She also faults the district court for adopting Ian's proposed visitation schedule "word for word." We note the modification decision is not a "whole sale" adoption of a party's proposed decision but contains only selected portions of Ian's modification request pertaining to the visitation schedule and joint legal custody language. *See In re Marriage of Siglin*, 555 N.W.2d 846, 849 (Iowa Ct. App. 1996). Even if the district court copied from Ian's modification request, "[w]e do not apply a separate standard of review on appeal from a decree prepared by counsel. Moreover, in equity actions such as this we review the evidence anew, disconnected, ultimately, from the trial court findings." *Id.*

for every weekend. We disagree. A simple application of the schedule to a calendar will provide the parties and the child the prediction they need for planning purposes. Abbey's proposed elimination of the midweek visitation is inequitable to Ian and not in the child's best interests as this would result in the child not seeing Ian for up to two weeks at a time—a schedule Abbey conceded at trial she would not like to have imposed on her and a schedule the child would not like either.

Abbey likewise asserts the change to the joint custody language is not in the best interests of the child. She maintains Ian should just be happy with the information she has provided him over the years, and she claims it is his expectations and attitude that are the problem with the parties' lack of communication. She claims there was not a problem with complying with the spirit and intent of the original language regarding joint legal custody. We disagree. Based on the evidence presented, it is clear Abbey does not think Ian needs or deserves information regarding the child's education, medical appointments, or living arrangements. We agree with the district court's conclusion that Abbey needed a further explanation of her obligations to provide information on a timely basis as the physical care parent.

**V. Health Insurance.**

Abbey next asserts the court should not have modified the provision requiring her to provide health insurance for the child. She notes the child's health insurance is currently provided through her new husband's employer. This coverage encompasses her entire family of four, and the amount they pay

for the coverage will not change whether the child at issue is covered by the plan. Thus, she claims the most economical way to provide coverage for the child is for the child to remain on her family plan and for Ian to pay her cash medical support in the amount permissible under the child support guidelines. At trial, Abbey testified the only reason she wanted to cover the child on the insurance provided by her new husband's employer—coverage that is more expensive than what is available to Ian—is so that she will continue to receive the explanation of benefits documents that come from the insurance company after the services are rendered.

Iowa Code section 252E.1A(2) (2013) requires the court to order a parent to cover the child with a health benefit plan if the plan is accessible and the cost of the plan is reasonable. The prior decree provided that Ian to pay Abbey $11.00 per month for cash medical support because neither party had health insurance available through their respective employers. Thus, Abbey was required to provide the health insurance. That situation has changed, and now both parties have access to health insurance for the child. However, the cost of Abbey's plan is unreasonable in light of Ian's gross income.[2] The cost of Ian's plan is reasonable as provided by section 252E.1A(2)(a)(1)—the premium cost for the child does not exceed five percent of the parent's gross income. There was no evidence regarding the adequacy of the specific benefits provided for the child under either plan. In light of availability of health coverage for the child through Ian's employer's plan at a reasonable cost, we determine the district

---

[2] Abbey conceded her husband's plan's cost remains the same whether there are two or an unlimited number of people covered. We conclude the guidelines do not require Ian to subsidize Abbey's family coverage for herself and her other child.

court correctly applied the child support guideline provisions, and we affirm the district court's modification.[3]

## VI.  Child Support.

Abbey also claims the court was wrong to impute to her income in the amount of $17,320.68 in the child support calculations because she claims evidence shows she actually earns $14,560, annually.  Abbey testified she works between twenty and twenty-four hours per week at her step-father's business earning $14.00 per hour.  At twenty hours per week, Abbey would earn an annual income of $14,560.  However, at twenty-four hours per week, Abbey would earn an annual income of $17,472.  Six months before trial, Abbey filed a child support worksheet indicating she earned $17,320.68 while working part time (twenty to twenty-four hours per week) for the State of Iowa.  Abbey quit working for the State of Iowa and started working for her step-father at a slightly decreased hourly wage shortly before trial.  She testified she made the career move because of greater flexibility in hours and the ability to bring her youngest child to the office, saving daycare costs.

In calculating child support, the district court used an annual income equal to her prior earnings with the State—$17,320.68—which is in line with what she claimed her earnings will be at her new employment.  We discern no error in the district court's child support calculation.

Abbey also requests we make the child support modification retroactive. *See* Iowa Code § 598.21C(5) (noting a court may make an increase in support

---

[3] Neither party raised at the district court or briefed on appeal a possible proration of health insurance premium as allowed under Iowa Court Rule 9.14(5).

retroactive "only from three months after the date of the notice of the pending petition for modification is served on the opposing party"). The trial court made the support modification effective beginning in February 2015, when the modification decree was filed. Abbey notes Ian initiated the modification proceeding in March 2014. She filed her answer in April 2014. Therefore, she claims the child support should be retroactive to August 2014.

Ian did not start his new job until September 2014. It was the change in Ian's income that justified the change in the child support. In addition, at trial Abbey did not request the support be retroactive to August or September 2014; instead, in her pretrial filing she requested the obligation be changed beginning in January 2015. Making a support award retroactive is permissible, not mandatory, and the district court has discretion in determining whether such retroactive application is warranted. *In re Marriage of Ober*, 538 N.W.2d 310, 313 (Iowa Ct. App. 1995). We conclude the district court did not abuse its discretion when ordering the increase in child support to be effective as of February 2015.

**VII. Attorney Fees.**

**A. Trial Attorney Fees.** Finally, Abbey claims the court should have awarded her trial attorney fees. We review the district court's decision to award attorney fees for abuse of discretion. *In re Marriage of Michael*, 839 N.W.2d 630, 635 (Iowa 2013). "Whether attorney fees should be awarded depends on the respective abilities of the parties to pay." *In re Marriage of Sullins*, 715 N.W.2d

242, 255 (Iowa 2006). We find no abuse of discretion in the district court's decision not to award Abbey trial attorney fees.

**B. Appellate Attorney Fees.** Both parties request an award of appellate attorney fees. "Appellate attorney fees are not a matter of right, but rather rest in this court's discretion. In determining whether to award appellate attorney fees, we consider the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *In re Marriage of McDermott*, 827 N.W.2d 671, 687 (Iowa 2013). We also consider whether a party was obligated to defend the district court's decision. *In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007). Upon our consideration of these factors, we award Ian $2000 in appellate attorney fees.

## VIII. Conclusion.

Upon our de novo review, we conclude the district court's modification of the visitation schedule and clarification of the parties' obligations as joint legal custodians was in the best interests of the child at issue. Because Ian has health coverage available through his employer at a reasonable cost, we determine the district court correctly modified who would be responsible for providing health insurance for the child. Finally, we discern no error in the district court's child support calculation. Abbey is responsible for $2000 of Ian's appellate attorney fees and for the costs of this appeal.

**AFFIRMED.**