# IN THE COURT OF APPEALS OF IOWA

No. 17-0927
Filed March 21, 2018

**JOSEPH M. HAMBLETON,**
 Plaintiff-Appellant,

**vs.**

**AMBER L. McWHORTOR,**
 Defendant-Appellee.

_____

Appeal from the Iowa District Court for Lee (South) County, Mary Ann Brown, Judge.

A father seeking joint physical care of his son appeals from the district court's order declining to modify a custody decree. **AFFIRMED.**

Curtis R. Dial of Law Office of Curtis Dial, Keokuk, for appellant.

Scott E. Schroeder of Clark & Schroeder, PLLC, Burlington, for appellee.

Considered by Doyle, P.J., and Tabor and McDonald, JJ.

**TABOR, Judge.**

Joseph Hambleton and Amber McWhortor are the parents of a son, R.H., who was born in January 2013. When R.H. was one year old, the parents entered a consent decree awarding his physical care to Amber. In May 2016, Joseph filed a modification action seeking joint physical care. Finding no substantial change in circumstances, the district court declined to disrupt the physical-care arrangement. Joseph appeals, contending the district court applied an incorrect burden of proof. Because the district court used the correct standard for a custody modification and Joseph did not meet that standard, we affirm.

## I.     Legal Standards and Scope of Review

This custody modification case is governed by Iowa Code chapter 600B (2017) because the parents were not married. We apply the same legal framework to custody and visitation matters involving unmarried parents as we do to those issues arising between parents who had been married. *See* Iowa Code § 600B.40 (cross referencing section 598.41).

Custody proceedings between unmarried parties are in equity so our review is de novo. Iowa Code § 600B.40; *Phillips v. Davis-Spurling*, 541 N.W.2d 846, 847 (Iowa 1995). We give weight to the fact findings of the district court, especially as to witness credibility, but the findings do not mandate our result. *Christy v. Lenz*, 878 N.W.2d 461, 464 (Iowa Ct. App. 2016). The deference we pay to the district court's decision relates largely to the trial judge's firsthand opportunity to "hear the evidence and view the witnesses." *Id.*

## II.     Facts and Prior Proceedings

Amber has been R.H.'s primary caregiver since his birth in January 2013. In April 2013, Joseph filed a petition to determine his paternity and set custody, visitation, and support.  Joseph and Amber entered a consent decree on these issues in January 2014.  The decree awarded the parents joint legal custody, placed physical care with Amber, and granted Joseph "liberal and reasonable visitation."

Two and one-half years later, Joseph filed a petition to modify the custody provisions of the decree.  The petition noted Amber had been held in contempt of the decree based on refusing visitation to Joseph.  The petition alleged a substantial and material change in circumstances since the decree and asserted it would be in R.H.'s best interests for the parties to have "shared physical care." Amber resisted the proposed change in physical care.

The district court heard the modification matter in February and March of 2017.  The evidence showed R.H. was a "well-adjusted" four-year-old and developmentally on track.  Amber and R.H. were living in Fort Madison with her mother, who worked as a registered nurse.  R.H. has a close bond with his grandmother.  Amber also had an infant daughter.  Joseph lived in Keokuk with his fiancé and her six-year-old daughter.  Both parents had steady employment. Amber had been working for nearly ten years as a cashier at a filling station.  She earned $11.20 per hour, amounting to about $22,000 per year.  Joseph had served for five years as a patrol deputy with the Lee County Sheriff's Office.  His 2016 salary was approximately $53,000.

Joseph asserted a change in his work schedule since the consent decree was entered made it "more appropriate to have shared physical care" of R.H. He testified that in November 2015 his office moved to twelve-hour shifts—alternating between five days on and two days off one week and five days off and two days on the next week. At the time of the consent decree, Joseph worked eight-hour shifts with six days on and two days off and then would jump to afternoon or night shifts. The consent decree allowed Joseph to have overnight visitation with R.H. on his two scheduled days off. In her request for relief, Amber recognized the need to alter the visitation provisions of the consent decree based on Joseph's revised work schedule. Joseph also testified regarding two incidents that occurred at R.H.'s daycare when Amber became upset and acted irrationally. Amber testified that Joseph had exaggerated her behavior and took the incidents out of context.

In May 2017, the district court entered an order finding no basis for modifying R.H.'s physical care. The court reasoned: "A change in a work schedule is a natural occurrence and not a substantial change." The court also addressed Joseph's allegations concerning Amber's "outbursts" at the daycare and did not find they affected the modification decision. The court alternatively concluded even if Joseph had established a substantial change in circumstances not contemplated in the consent decree, Joseph had "not met the heavy burden of showing that he could improve on Amber's parenting of the child at this time." Joseph now appeals the district court's denial of his modification request.

### III. Analysis of Father's Modification Claims

### A. Did the District Court Apply the Correct Burden of Proof?

Iowa courts may modify the custodial terms of a paternity decree only when there has been a substantial change in circumstances since the time of the decree not contemplated when the decree was entered, which is more or less permanent and relates to the welfare of the child. *See Melchiori v. Kooi*, 644 N.W.2d 365, 368 (Iowa Ct. App. 2002). Where a petitioning parent has not been the primary custodial parent, he or she must show the ability to be a suitable primary caregiver. *See id.* at 368–69. "The heavy burden upon a party seeking to modify custody stems from the principle that once custody has been fixed it should be disturbed for only the most cogent reasons." *In re Marriage of Frederici,* 338 N.W.2d 156, 158 (Iowa 1983).

Iowa courts apply a less demanding burden when a parent is seeking to change only a visitation provision in a decree. *In re Marriage of Brown*, 778 N.W.2d 47, 51–52 (Iowa Ct. App. 2009). Visitations cases require a less extensive change in circumstances. *Id.* A parent seeking to modify visitation need only show a material change in circumstances since the decree and the requested change in visitation is in the child's best interests. *In re Marriage of Salmon*, 519 N.W.2d 94, 95–96 (Iowa Ct. App. 1994). "The rationale for this lower standard is found in the prevailing principle that the best interests of children are ordinarily fostered by a continuing association with the noncustodial parent." *Id.* at 96.

As his opening salvo, Joseph argues the district court "applied the incorrect burden of proof" by requiring him to show there had been a substantial change in circumstances since the time of the consent decree, not contemplated when it was

entered, which was more or less permanent, and related to R.H.'s welfare. *See Melchiori*, 644 N.W.2d at 368. Joseph contends the district court should have employed the less burdensome showing for changing visitation because his request for shared physical care equated to the grant of additional visitation time. Thus, he relies on *Brown*, which "utilized the lower burden of proof applicable in visitation modifications in modifying the parties' joint physical care parenting schedule." 778 N.W.2d at 53.

Joseph's reliance on *Brown* is misplaced because he seeks modification of the custodial arrangement, not just the visitation schedule. He explicitly asks for "joint physical care" without depriving Amber of custody. A change in the physical care arrangement is custodial, therefore, the higher burden applies. *See id.* at 51–53. Furthermore, the parents in *Brown* already were exercising joint physical care; only the parenting schedule was in play. "Because both parents already jointly participated in the routine daily care of the children, that modification did not cause a disruption in the established patterns of care or emotional bonds between the parents and the children." *Id.* at 53. Here, only Amber was responsible for R.H.'s routine daily care. A modification of the physical-care arrangement would have caused a disruption in the pattern of care to which the four-year-old child was accustomed. The district court was correct in applying the more stringent standard for modifying a physical-care award.

**B. Did Joseph Satisfy the Burden?**

Joseph alternatively argues if the district court applied the correct standard, he met the higher burden of proof. He claims Amber's "moral misconduct and emotional instability" should be a serious consideration in the custody determination. He also returns to the issue of his work schedule, asserting "[n]ow he has the time to co-parent."

Like the district court, we conclude Joseph failed to prove a substantial change in circumstances that was not contemplated when the decree was entered. The revamping of Joseph's work shifts by the sheriff's office warranted revising the visitation schedule but was not cause for awarding joint physical care. *See Housley v. Holmlund*, No. 12-1823, 2013 WL 2637493 (Iowa Ct. App. June 12, 2013) (upholding district court's denial of joint physical care, but affirming modification of visitation based on father's new work schedule); *In re Marriage of Cunningham*, No. 08-0557, 2009 WL 138291 (Iowa Ct. App. Jan. 22, 2009) (holding father's new work hours as a peace officer were "a natural occurrence" that could have been foreseen at the time of the decree and did not justify modification). Further, Joseph's allegations about isolated incidents where Amber acted immaturely do not qualify as a permanent change in circumstances that would open the door to modification of the physical care arrangement. Accordingly, we affirm the district court's denial of the modification petition.

**IV. Appellate Attorney Fees**

Amber requests an award of $5632.25 in attorney fees for the appeal. In addressing the request, we consider her financial needs, Joseph's ability to pay, and whether she was obligated to defend the district court's decision on appeal.

*See* Iowa Code § 600B.26; *In re Marriage of Roerig*, 503 N.W.2d 620, 623 (Iowa Ct. App. 1993). Amber has prevailed under our review, and Joseph should contribute toward her appellate attorney fees. *See Roerig*, 503 N.W.2d at 623. We order Joseph to pay $4000 toward Amber's appellate attorney fees. Costs of this appeal are taxed to Joseph.

**AFFIRMED**.