# IN THE COURT OF APPEALS OF IOWA

No. 21-1044
Filed April 13, 2022

**BRANDYN T. NOLAN COBB,**
Petitioner-Appellee,

**vs.**

**KELSEY EILER,**
Respondent-Appellant.

_____

Appeal from the Iowa District Court for Polk County, Jeanie Vaudt, Judge.


Kelsey Eiler appeals the district court's order granting Brandyn Nolan Cobb physical care of their child. **AFFIRMED**.


Benjamin Folladori of Marberry Law Firm, P.C., Urbandale, for appellant.

Jacob R. Koller of Simmons Perrine Moyer Bergman PLC, Cedar Rapids, for appellee.


Considered by Schumacher, P.J., and Ahlers and Badding, JJ.

**AHLERS, Judge.**

Brandyn Nolan Cobb and Kelsey Eiler met online in early 2018. Kelsey became pregnant shortly thereafter, and Kelsey notified Brandyn early in the pregnancy. Brandyn ceased contact with Kelsey for the duration of the pregnancy. The child was born in October 2018. After Brandyn's paternity was established in a child support case, Brandyn reached out to Kelsey to meet the child. After the first meeting, Kelsey allowed Brandyn to have an overnight visit with their child. Soon after, she and the child moved to North Dakota,[1] nearly ten hours away, without advance notice to Brandyn.

Within about one month of the move, Brandyn filed a petition starting this action seeking to establish custody and physical care of the child. A default order was entered due to Kelsey's failure to complete case requirements and engage in the matter, and Brandyn was granted physical care of the child. After a few months with the child in Brandyn's care, the default order was set aside, and the parents stipulated to a temporary joint-physical-care arrangement. About one year later, the case went to trial. The district court granted Brandyn physical care of the child with visitation to Kelsey. Kelsey appeals. She asserts she should be granted physical care.

**I.      The Parties' Background Information**

Brandyn is thirty-one years old, is married, and lives in Norway, Iowa. He and his wife live in a house they own. He works full time at a job he has had since

---

[1] The mother's move to North Dakota was not a random choice of locations. The mother had lived most of her life in North Dakota and still had numerous close relatives living there.

2016. His job allows him to work from home.

Kelsey is twenty-two years old and lives in Bismarck, North Dakota. She has two children in addition to the child at issue here—one older and one younger. Her fiancé is the father of the youngest child. Kelsey resides in a three-bedroom apartment with her fiancé, all three children, and her mother. She is employed working thirty-two hours per week as a certified nursing assistant. During the child's life, Kelsey has changed jobs and residences multiple times.

## II.      Standard and Scope of Review

We review physical-care disputes between unwed parents de novo.[2] Because the district court was able to see and hear the witnesses, we give deference to its findings of fact, especially as to witness-credibility determinations, but we are not bound by them.[3] Our first and governing consideration is the child's best interests.[4] We will affirm the district court unless the court's ruling failed to do substantial equity.[5]

## III.      Physical Care

Physical care is "the right and responsibility to maintain a home for the minor child and provide for the routine care of the child."[6] When making a physical-care determination for a child of parents who have never been married, the same factors apply as when making such determinations for a child of married parents, including the factors enumerated in Iowa Code section 598.41(3) and *In re Marriage of*

---

[2] *McCullough v. Cornette*, No. 20-1211, 2021 WL 1399746, at *1 (Iowa Ct. App. Apr. 14, 2021) (citing *Phillips v. Davis-Spurling*, 541 N.W.2d 846, 847 (Iowa 1995)).
[3] *McKee v. Dicus*, 785 N.W.2d 733, 736 (Iowa Ct. App. 2010).
[4] Iowa R. App. P. 6.904(3)(o).
[5] *Hensch v. Mysak*, 902 N.W.2d 822, 824 (Iowa Ct. App. 2017).
[6] Iowa Code § 598.1(7) (2019).

*Winter*, 223, N.W.2d 165–67 (Iowa 1974).[7] We need not repeat those factors here, as they are well known. The court is to consider these factors to arrive at a care arrangement that will allow the child "the maximum continuing physical and emotional contact with both parents."[8] The child should be placed in the environment that is most likely to bring the child to physical and mental health and social maturity.[9] Even though we have factors to consider, this does not mean we utilize an "iron clad formula" or "inflexible system of legal presumptions."[10] Rather, each case must be decided based on its own unique circumstances.[11]

We start by observing that both parents are suitable caretakers for the child, and the child could be safely placed with either parent. They have both demonstrated a willingness and ability to meet the child's needs. Unfortunately, the geographic distance between them makes it necessary to choose between them. The district court determined the father would be the better choice to provide for the physical care of the child, making these observations:

> On balance, Brandyn is more capable of providing a safe and stable environment for [the child] in all respects. The uncontroverted evidence shows that Brandyn has maintained a stable relationship with [his wife], stable housing, and stable employment. He has a stable extended family, all of whom welcome [the child].
> A major determining factor in this case is the respective maturity, willingness and abilities of Brandyn and Kelsey to support each other and co-parent. Brandyn has demonstrated through testimony and evidence that he can and will do so. Kelsey is less willing. Text conversations in evidence credibly show that Kelsey made disparaging comments about Brandyn to Brandyn regarding his status as [the child]'s biological father. This conduct does not foster the best interest of [the child]. The court is unconvinced that

---

[7] *McCullough*, 2021 WL 1399746, at *1.
[8] Iowa Code § 598.41(1)(a).
[9] *McCullough*, 2021 WL 1399746, at *1.
[10] *In re Marriage of Hansen*, 733 N.W.2d 683, 700 (Iowa 2007).
[11] *Hansen*, 733 N.W.2d at 700.

> Kelsey would consistently encourage, support, and facilitate Brandyn's relationship with [the child] if [the child] was placed in Kelsey's primary care. The court does not have this concern with Brandyn. Each parent consistently supporting the other parent's relationship with [the child] is especially important in this matter since the parents live 700 miles apart. Under this record Brandyn is better able to do so.

Based on our de novo review, we agree with the district court's observations and conclusions. The father has exhibited superior stability, making him better suited to serve as the primary caretaker. The mother has moved upwards of four times during this child's young life, and she has changed jobs nearly as many times as well. The mother moved to North Dakota without notice to the father and seemingly with little planning—she had not secured housing or a job when she decided to move. The father, in contrast, is married, lives in a home he owns with his wife, and has maintained a steady job. His job allows him to work from home, giving him additional opportunity to spend time with and care for the child. By all accounts, the father's decision-making has been focused on the child's best interests since he became involved in the child's life.

The consideration weighing most heavily in the father's favor, however, is the father's willingness to support the mother's relationship with the child going forward. The parent awarded physical care is required to support the other parent's relationship with the child.[12] While the mother testified at trial to a willingness to support the father's relationship with the child, her actions belie that claim. The mother's communications with the father have been historically disparaging. Text messages between the parties show that she repeatedly

---

[12] *Hansen*, 733 N.W.2d at 700 (citing Iowa Code § 598.41(5)(b)).

referred to the child as "my daughter," referred to the father as a "sperm donor," and claimed he was not "a real father." Further, after her move to a location ten hours away, she refused to allow the father visits with the child without the mother's presence. It was not until trial that she first acknowledged the importance of the father in the child's life. In contrast, the father exhibited a good track record of attempting to work with the mother to effectively co-parent the child. In spite of provocative comments from the mother in her text messages, the father remained cordial and seldom if ever rose to the bait. He has invited the mother's family as well as his own to the child's life events. He has attempted to maintain respectful contact with the mother to do what is in the child's best interests. Our review of the evidence convinces us that the father is the parent most likely to support the other parent's relationship with the child, making him the better choice to have physical care of the child.

We conclude our discussion on this issue by addressing two arguments raised by the mother. First, she invokes the approximation principle. The approximation principle refers to the desirability of dividing caregiving responsibilities following the demise of the parents' relationship in roughly the same proportion as the parties divided those responsibilities before the relationship's demise.[13] The premise behind the principle is that it results in stability and continuity for the child.[14]

---

[13] *Shellady v. Glover*, No. 21-0886, 2022 WL 951099, at *2 (Iowa Ct. App. Mar. 30, 2022).
[14] *Shellady*, 2022 WL 951099, at *2.

The mother asserts that the principle applies here because she fulfilled the role as the child's primary caretaker since the child's birth. We do not find the approximation principle controlling here. The approximation principle is just one factor in a multi-factored analysis under which no single factor is determinative.[15] We understand that the father was absent during the mother's pregnancy and for the first seven months of the child's life. But, after paternity was established in a child support case, the father reached out to meet and form a relationship with the child. Shortly after the father did so, the mother moved nearly ten hours away to North Dakota without notice to the father and refused to allow him to serve in a caretaker capacity. The father filed this action almost immediately thereafter. After a default order was entered in this case, the father was granted physical care of the child. After the default was set aside, the parents agreed to operate under a joint-physical-care arrangement—alternating care every four weeks. This sequence of events resulted in the father providing sole physical care or joint physical care for about one-half of the child's life as of the time of trial. Under these circumstances, we do not find the approximation principle compelling. While we favorably consider the mother's service as sole caretaker for the first sixteen months of the child's life, we do not believe this single factor outweighs the other factors in the father's favor.

The second argument the mother raises is that she should be granted physical care so that this child can live primarily with the child's older and younger half-siblings. To be sure, there is a strong interest in keeping siblings together,

---

[15] *Shellady*, 2022 WL 951099, at *2.

including half-siblings.[16] However, avoiding separation of siblings or half-siblings is only one factor, as the ultimate consideration is the long-term interests of the child.[17] Here, we find it to be in the child's best interests to be placed with the father even though it results in separation of half-siblings. We reach this conclusion for several reasons. First, the child is relatively young, so, while bonded to her half-siblings, the bonding period is of relatively short duration.[18] Second, the mother is granted nearly equal time with the child until the child reaches school age, gets nearly the entire summer with the child thereafter, and gets video visits multiple times per week, so there will be continued bonding opportunities for the half-siblings.[19] Third, the desire to avoid separation of half-siblings does not outweigh the other important considerations in favor of granting physical care to the father—specifically his greater stability and willingness to foster a relationship with the other parent.[20]

Following our de novo review, we affirm the district court's decision to grant the father physical care of the child.

## IV. Appellate Attorney Fees

The mother requests that we award her appellate attorney fees. Iowa Code section 600B.26 permits our court to award reasonable attorney fees to the

---

[16] *See In re Marriage of Orte*, 389 N.W.2d 373, 374 (Iowa 1986) (recognizing the importance of keeping siblings together, including half-siblings).

[17] *In re Marriage of Frey*, No. 21-0448, 2022 WL 108952, at *3 (Iowa Ct. App. Jan. 12, 2022).

[18] *See Frey*, 2022 WL 108952, at *3 (noting that the short duration of the bonding period influences consideration of the effect of separating half-siblings).

[19] *See Frey*, 2022 WL 108952, at *3 (recognizing significant visitation time as a factor when assessing the impact of separation of half-siblings).

[20] *See Frey*, 2022 WL 108952, at *3 (recognizing that the desire to avoid separation of half-siblings does not necessarily overcome other factors).

prevailing party.[21]  The standards that apply to an award of attorney fees under Iowa Code chapter 600B are the same as those that apply to a dissolution of marriage action pursuant to chapter 598, except they are limited to being awarded only to the prevailing party.[22]  "Appellate attorney fees are not a matter of right, but rather rest in this court's discretion.  In determining whether to award appellate attorney fees, we consider the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal."[23]  "We also consider whether a party was obligated to defend the district court's decision."[24]  Because the mother was unsuccessful on appeal, we decline to award her appellate attorney fees.

## V.    Conclusion

We agree with the district court that physical care of the child is properly granted to the father.  We deny the mother's request for appellate attorney fees. Costs on appeal are assessed to the mother.

**AFFIRMED.**

---

[21] *McCullough*, 2021 WL 1399746, at *3.

[22] *McCullough*, 2021 WL 1399746, at *3 (citing *Markey v. Carney*, 705 N.W.2d 13, 25 (Iowa 2005)).

[23] *Christy v. Lenz*, 878 N.W.2d 461, 469 (Iowa Ct. App. 2016) (quoting *In re Marriage of McDermott*, 827 N.W.2d 671, 687 (Iowa 2013)).

[24] *Christy*, 878 N.W.2d at 469.