# IN THE COURT OF APPEALS OF IOWA

No. 22-0072
Filed July 20, 2022

**ALYSSA MARIE SLUSSER,**
Petitioner-Appellee,

**vs.**

**DAKOTA DANIEL STEVENS,**
Respondent-Appellant.
_____

Appeal from the Iowa District Court for Webster County, John R. Flynn, Judge.

Dakota Stevens appeals the denial of his request to modify physical care of a child. **AFFIRMED AND REMANDED.**

Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West Des Moines, for appellant.

Jennifer Frese of Kaplan & Frese, LLP, Marshalltown, for appellee.

Considered by May, P.J., Chicchelly, J., and Gamble, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2022).

**CHICCHELLY, Judge.**

Deciding physical care of a child is "inevitably an onerous task." *In re Marriage of Graziano*, 573 N.W.2d 598, 599 (Iowa 1998). Sometimes, the court must decide between two exemplary parents. *See, e.g.*, *In re Marriage of Fennelly & Breckenfelder*, 737 N.W.2d 97, 101 (Iowa 2007) ("[T]he court noted the conundrum it faced in deciding who should be awarded physical care because both parties are great parents."). At other times, the court is on the horns of a dilemma, forced to choose one undesirable parent over another. *See, e.g.*, *Smith v. Smith*, No. 03-0863, 2004 WL 433906, at *2 (Iowa Ct. App. Mar. 10, 2004) ("Simply put, the record reveals the trial court was faced with the unhappy task of choosing between two immature and seriously flawed parents."). This appeal presents the latter scenario.

On appeal from the order denying his request to modify custody, Dakota Stevens contends the court erred by finding he failed to show he can provide superior care to the child he shares with Alyssa Slusser. He also challenges the award of attorney fees to Alyssa. Following our review, we agree that the child's best interests are better served in Alyssa's care and affirm the award of attorney fees. We remand to the district court to determine a reasonable award of Alyssa's appellate attorney fees.

### I. Background Facts and Proceedings.

Dakota and Alyssa are the parents of a child born in 2012. For the first four years of the child's life, Dakota and Alyssa shared physical care by informal agreement. But Dakota took the child in October 2016 and failed to return her. In December, Dakota told Alyssa that she would not get the child back. Unable to

reach the child by phone or otherwise locate her, Alyssa reached out to the Iowa Department of Human Services, who located the child in Texas.

After locating the child, Alyssa petitioned the district court, seeking physical care of the child. In February 2017, the court entered a temporary custody order, requiring Dakota to return the child to Alyssa within seven days. It also provided that physical care would alternate between Dakota and Alyssa monthly.

When Dakota returned the child, Alyssa noticed negative behaviors that were not present when she left Alyssa's care five months earlier. The child was fearful, had night terrors, self-harmed, and had emotional outbursts daily. The child reported that Dakota would spank her bare buttocks with a belt, causing bruising. Because of the allegations of physical abuse, the child was placed in Alyssa's temporary care.

The child was diagnosed with adjustment disorder with disturbance of emotions and conduct. Alyssa took the child to parent-child interactive therapy to address any trauma that occurred. The child's therapist recommended Dakota engage in the same therapy to have in-person visits with the child, but Dakota refused and claimed the child's mental-health diagnosis was "made up." As a result, the only contact Dakota had with the child for one year was a weekly telephone call.

Dakota began having limited in-person visits with the child in March 2018. The visits gradually increased in length to include overnight visits. Then, in June 2019, Dakota and Alyssa reached an agreement about the child's custody. They stipulated that they would share joint legal custody of the child, with Alyssa acting as the child's physical caretaker and Dakota receiving visits on alternating

weekends. The district court entered an order approving the agreement the next day.

This modification action began a mere five months after the parties' reached their agreement. Alyssa petitioned to modify the custody agreement, asking for sole legal custody; in response, Dakota sought physical care. After Alyssa voluntarily dismissed her petition, the matter proceeded to trial on Dakota's request to modify physical care.

The district court denied the modification in November 2021. Although it found a substantial change in circumstances had occurred since June 2019, the court had "serious concerns about each parent's ability to adequately care for [the child] on a primary basis." Ultimately, it found Dakota failed his burden of showing he can provide superior care to the child. But the court modified the visitation schedule to increase the amount of visitation Dakota receives. It also awarded Alyssa $3000 in trial attorney fees.

**II. Scope and Standard of Review.**

We review the modification ruling de novo. *See Thorpe v. Hostetler*, 949 N.W.2d 1, 4 (Iowa Ct. App. 2020). We decide the issues anew after an examination of the entire record. *See id.* at 5. And though we are not bound by the district court's factual findings, we do give them weight, especially when they concern witness credibility. *See id.*

**III. Modification of Physical Care.**

As the parent seeking to modify the parties' physical care arrangement, Dakota bears the burden of showing (1) a material and substantial change in circumstances has occurred since the decree's entry that warrants a change in the

custodial agreement and (2) "an ability to minister more effectively to the child[]'s well being." *Id.* (citation omitted). Because neither party challenges the finding of a material and substantial change in circumstances, the question is whether Dakota can provide superior care than Alyssa.

Dakota's argument focuses mostly on Alyssa and her flaws: her substance use, an arrest for an incident of domestic abuse with a former boyfriend, exposing the child to unsafe people, her mental health, and housing instability. Those same concerns were considered by the district court, which found that Alyssa "is certainly not a perfect mother":

> On the contrary, the court has serious concerns about Alyssa's ability to properly care for this child. These concerns have all been set forth above in the findings of facts section of this order. To be clear, the court has considered all of these concerns. The court is not ignoring these serious concerns. They are in fact very serious. Alyssa needs to do better moving forward.

But the court found the witnesses who testified about Alyssa's bond and relationship with the child credible and noted that Alyssa has a support system. And though Alyssa was not completely honest about her shortcomings, the court found that "Alyssa deeply loves her daughter and is not hiding from her past or present situation." The same could not be said of Dakota, who failed to present evidence of a bond with the child or a support system. The court also made explicit findings about Dakota's evasiveness in providing information about where he lives and what he does for a living and noted many of his claims defy logic.

Dakota also notes that physical care of Alyssa's younger child was modified to place the child in her father's care based on the same concerns cited in this appeal. The district court acknowledged it was "keenly aware" of the findings made

by the district court in the other modification action. But there are significant differences between Dakota and the other child's father. The court in the other modification action found the credible evidence showed the father of Alyssa's younger child was superior to Alyssa as a parent. As the other court noted in ruling on that modification action, "Alyssa has not voiced any concerns about [the younger child]'s physical, social, mental, or emotional health while in [her father]'s care." The same cannot be said here given the serious concerns about Dakota's physical abuse of the child or other traumatizing behavior that altered the child's behavior after five months in Dakota's care.

Finally, Dakota claims the district court overemphasized his failure to explain the source of his income considering the concerns about Alyssa. But the court's concerns about Dakota go beyond his failure to explain his income. The court could not find Dakota could provide superior care "due to his past behavior and the evasiveness, secrecy, narcissism and unwillingness of Dakota to inform the Court about his professional life, among other things." On top of Dakota's failure to provide information about how he earns a living, the court noted "very serious concerns relative to his ability to adequately care for [the child] as a primary caretaker." Of chief concern is the abuse allegation. The court also noted his lack of bond with the child, his refusal to cooperate with the abuse investigation, his apparent dishonesty, the $24,800 he owes in child support despite claims of wealth, and his unwillingness to admit any faults or mistakes. And although he brings up Alyssa's violent conduct toward others, Dakota also has a criminal record with convictions for disorderly conduct and domestic abuse assault.

We share the same concerns as the district court about Alyssa's parenting. Without minimizing those concerns, we also agree that Dakota failed to show he is the better parent. As the district court explained, the choice here is between Alyssa's known deficiencies as a parent and all that is unknown about Dakota. The little that is known about Dakota—his act of refusing to return the child for five months and the change in the child that resulted from it—is of great concern. Although Alyssa is far from an ideal parent, Dakota failed to show he is superior in this regard. We therefore affirm the denial of Dakota's request to modify physical care.

**IV. Attorney Fees.**

Dakota also challenges the district court's award of $3000 in trial attorney fees to Alyssa. We review the award of trial attorney fees for an abuse of discretion. *See Christy v. Lenz*, 878 N.W.2d 461, 469 (Iowa Ct. App. 2016). An award of trial attorney fees depends on the parties' relative financial positions. *See id.* We will overturn an award of trial attorney fees only if "it rests on grounds that are clearly unreasonable or untenable." *In re Marriage of Erpelding*, 917 N.W.2d 235, 238 (Iowa 2018) (citation omitted).

The district court awarded Alyssa trial attorney fees after considering "the respective incomes of the parties and the legal expenses they have both incurred." This was a proper exercise of discretion. Dakota premises his argument against the award on a successful appeal of his request to modify physical care, *see* Iowa Code § 600B.26 (2019) (stating that "the court may award *the prevailing party* reasonable attorney fees" in a modification action (emphasis added)), but we have

affirmed the district court on that matter. Because the district court did not abuse its discretion in awarding trial attorney fees, we affirm that award as well.

Alyssa asks us to award her $10,000 in appellate attorneys incurred in defending the district court's decision on appeal. An award of appellate attorney fees is not a matter of right but rests in this court's discretion. *See Christy*, 878 N.W.2d at 469. "[W]e consider the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *Id.* (citation omitted).

An award of Alyssa's appellate attorney fees is appropriate based on the circumstances before us. Because she has not provided an affidavit of attorney fees with documentation to support her request, we remand to the district court to determine the amount of Alyssa's appellate attorney fees and to enter judgment against Dakota in a reasonable amount. *See, e.g.*, *Markey v. Carney*, 705 N.W.2d 13, 26 (Iowa 2005) ("[U]nder our current practice, the issue of appellate attorney fees is frequently determined in the first instance in the district court because of the necessity for making a record." (alteration in original) (citation omitted)).

**AFFIRMED AND REMANDED.**