# IN THE COURT OF APPEALS OF IOWA

No. 22-0633
Filed December 7, 2022

IN RE THE MARRIAGE OF AUDREY SAMANTHA BOECK
AND KEENAN RUSSELL NELSON

Upon the Petition of
AUDREY SAMANTHA BOECK,
        Petitioner-Appellee,

And Concerning
KEENAN RUSSELL NELSON,
        Respondent-Appellant.

_____

        Appeal from the Iowa District Court for Audubon County, Greg W. Steensland, Judge.

        A father appeals from the order placing physical care of the parties' children with the mother.  **AFFIRMED AS MODIFIED.**

        Jason S. Rieper of Rieper Law, P.C., Des Moines, for appellant.

        Theodore R. Wonio of Rasmussen, Nelson & Wonio, P.L.C., Atlantic, for appellee.

        Considered by Vaitheswaran, P.J., and Greer and Schumacher, JJ.

**GREER, Judge.**

The timing of their children's births—one before Audrey Boeck and Keenan Nelson's divorce (E.N.) and one after (A.N.)—brings us to an issue in this appeal.[1] After the parties' marriage was dissolved by decree, they reconciled for a while and had another child but never married again. After the parents separated the second time, in January 2021 Audrey petitioned to establish custody, support, and visitation of A.N. In the earlier stipulated dissolution decree, the district court granted the parties joint legal custody of E.N., placed physical care with Audrey, and ordered visitation with Keenan on Wednesday evenings and alternating weekends. So, now with Audrey's pending petition on file as to A.N., Keenan filed a petition to modify physical care of E.N. The district court consolidated the cases to consider custody, care, and support of both children in the same proceeding. At the onset, the parties agreed on joint legal custody, but Keenan sought joint physical care of the children. Rejecting Keenan's plan for joint physical care, at trial Audrey asked for physical care with a visitation schedule similar to that from the dissolution decree except Keenan's Wednesday evening visitation would change to a Tuesday overnight visitation. The matter proceeded to trial on March 1, 2022. Addressing both children, the court's decree granted joint legal custody, placed physical care with Audrey, and continued the visitation schedule from the dissolution decree with slightly reduced visitation time. Keenan appeals. Audrey requests appellate attorney fees.

---

[1] The parents were married from 2009 until 2011. E.N. was born in 2009. While the parents never remarried, they did reconcile from late 2012 until 2020, and it was during this time that A.N. was born (2013).

## I. Standard of Review

Proceedings to establish or modify physical care are held in equity, and we review the district court's decision de novo. *Hensch v. Mysak*, 902 N.W.2d 822, 824 (Iowa Ct. App. 2017); *Christy v. Lenz*, 878 N.W.2d 461, 464 (Iowa Ct. App. 2016). We give weight to the court's findings of fact, especially with regard to witness credibility, but they are not binding on us. *Hensch*, 902 N.W.2d at 824; *Christy*, 878 N.W.2d at 464. Our primary consideration for establishing and modifying physical care is the best interests of the children. Iowa R. App. P. 6.904.

## II. Analysis

Two issues are raised on appeal by Keenan. He first asserts the district court should have awarded the parents joint physical care of the children. Then, in the alternative, Keenan seeks more visitation time than the district court awarded, claiming no evidence supported a reduction in the time compared to what he had under the dissolution decree.

### A. Joint Physical Care

We apply different standards when viewing the physical-care status of a child initially as opposed to when we are asked to modify an existing order. So, we address each child separately using the appropriate vantage point.

The Oldest Child—E.N.:

> To change a custodial provision of a dissolution decree, the applying party must establish by a preponderance of evidence that conditions since the decree was entered have so materially and substantially changed that the children's best interests make it expedient to make the requested change. The changed circumstances must not have been contemplated by the court when the decree was entered, and they must be more or less permanent, not temporary. They must relate to the welfare of the children. A parent seeking to take custody from the other must prove an ability

to minister more effectively to the children's well being. The heavy burden upon a party seeking to modify custody stems from the principle that once custody of children has been fixed it should be disturbed only for the most cogent reasons.

*In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983). The same burden applies to a parent seeking to modify physical care in favor of joint physical care. *In re Marriage of Davis*, No. 02-0314, 2002 WL 31641272, at *2 (Iowa Ct. App. Nov. 25, 2002).

Reconciliation of the parties and the subsequent birth of A.N. were certainly outside the parties' contemplation at the time of the dissolution decree. Neither party disputes the existence of a substantial change in circumstances. But, we review Keenan's request to modify the decree for a change to joint physical care over E.N. with this heavy burden in mind.

The Youngest Child—A.N.:

Without consideration of the heavy burden required to modify an existing decree, our review as to A.N. centers on evidence addressing the factors listed in Iowa Code section 598.41(3) (2021). The controlling consideration is the best interests of the child. *In re Marriage of Hansen*, 733 N.W.2d 683, 695–96 (Iowa 2007). When determining who will have physical care of the child, we will consider "stability and continuity with an eye toward providing the [child] with the best environment possible for [the child's] continued development and growth." *Id.* at 700. "These factors favor a parent who was primarily responsible for physical care of the child[]," though we examine each case's unique facts. *In re Marriage of Bain*, No. 07-0333, 2008 WL 4325499, at *3 (Iowa Ct. App. Sept. 17, 2008).

Finally, when a child is born of out wedlock, Iowa Code section 598.41 shall apply to the determination. *See* Iowa Code § 600B.40.

We start by considering four factors: "(1) stability, continuity of caregiving, and approximation; (2) 'the ability of the [parents] to communicate and show mutual respect'; (3) 'the degree of conflict between parents'; and (4) 'the degree to which the parents are in general agreement about their approach to daily matters.'" *In re Marriage of Hansen*, 886 N.W.2d 868, 874 (Iowa Ct. App. 2016) (quoting *In re Marriage of Hansen*, 733 N.W.2d 683, 696 (Iowa 2007)).

As to stability and continuity, Keenan asserts the parties co-parented during their relationship. However, he acknowledged Audrey was the children's primary caregiver whenever the parties separated. He also acknowledged Audrey has always been primarily responsible for doctor visits and medical decisions, even while the parties were in a relationship. Further, Keenan's lack of involvement with the children's schooling did not support a co-parent role. The history of care by Audrey detailed in the testimony reflected her role as the primary caregiver over the children. Thus, stability and continuity favor Audrey continuing to act as the primary caregiver.

As to the other three factors involving communication and conflict, Keenan asserts the parties' "struggles" are in the past and related to jealousy at the end of their relationship. He further described their conflict as "now virtually nonexistent" as they co-parent effectively. But the record is replete with examples of the parties' disrespect, conflict, and disagreement both before and after their relationship ended. And with this dynamic in mind, Audrey offered reasons why minimizing stress for the children was important for their best interests.

Text messages in the record show the parties appropriately co-parenting at times, but the messages also show open hostility and insults between the parties at other times. Keenan was charged with domestic assault from an August 2020 incident with Audrey, and he eventually pled guilty to simple assault. Keenan testified he believes Audrey filed her petition seeking custody and care of A.N. because she was upset he had a new girlfriend, which indicates the same tensions that ended their relationship were still present at trial. In December 2021, Keenan unilaterally decided to install monitoring software on the children's cell phones and refused to share details of the software with Audrey; this conflict was only resolved when Audrey's father bought the children new phones.

An incident from summer 2021 is illustrative of the parties' ongoing difficulties. On the day in question, Keenan took the children to the county fair. Audrey separately attended the fair at the same time. At a certain point, A.N. became separated from Keenan. Audrey testified she noticed A.N. alone and confused in a crowd, so they sat together on a bench to figure out what happened. Keenan soon found the two of them together on the bench. Audrey testified Keenan started "screaming" at both of them before she could say anything to him. Keenan denied yelling but acknowledged he "became extremely upset because Audrey never told" him she had A.N. Neither party's version of events describes appropriate co-parenting that day. Our review of these factors does not support an award of joint physical care for A.N.

For the same reasons, we conclude Keenan failed to carry his burden that a change in physical care is in E.N.'s best interests. We find that Audrey is the

superior parent to address both E.N.'s and A.N.'s needs. Therefore, we affirm the court's decision to place both children in Audrey's physical care.

### B. Visitation

As an alternative to the physical-care request, on appeal, Keenan advocates for more expansive visitation time with the children. In tandem with Audrey's arguments visitation should be exercised with both children together, we review the visitation schedule recognizing that while Keenan did not specifically ask for more *visitation* time, he did ask for expanded time. For reasons unknown, the district court granted less visitation than Audrey offered at trial and less than Keenan exercised under the dissolution decree as to the older child.[2] Keenan has followed that same schedule with the younger child. We note that in her proposed parenting plan, Audrey requested that the "Court modify the . . . Decree and award [Keenan] every Tuesday overnight." In her testimony, she reasoned that the overnight would make it easier for Keenan to have time with the children together given the busy activity schedule of the older child.

The parties live about fifteen minutes from each other and in the same school district. Despite the concerns with co-parenting, Audrey testified Keenan is a good father who is bonded with the children. And there was no evidence that there were serious problems with visitation as framed under the dissolution decree. On appeal, Audrey does not provide any reason to reject her own request to increase Keenan's parenting time other than to assert the court already "provided equitable and reasonable visitation." Seeing no argument to the contrary, we find

---

[2] The change would go from a five-hour Wednesday evening visit to an overnight on Tuesdays.

Audrey's request at the trial to increase visitation with Keenan is in the children's best interests. We modify the decree as follows:

> Keenan will be granted reasonable and liberal visitation to include a minimum of every other weekend commencing Friday after school (or at 4:00 p.m. if the child is not in school) until Sunday at 8:00 p.m.; every Tuesday commencing after school (or at 4:00 p.m. if the child is not in school) and concluding the following day when school begins (or at 12:00 p.m. if the child is not in school).

### C. Appellate Attorney Fees

Audrey requests appellate attorney fees. "Appellate attorney fees in a dissolution-of-marriage action are not awarded as a matter of right but rather rest in our discretion." *In re Marriage of Towne*, 966 N.W.2d 668, 680 (Iowa Ct. App. 2021). "Factors to consider in determining whether to award appellate attorney fees include 'the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal.'" *Id.* (quoting *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006)). Audrey is employed full-time and has the means to pay her attorney fees. Each party had some success on this appeal and so we decline to award appellate attorney fees to Audrey.

### III. Conclusion.

We find joint physical care is not in the children's best interests and confirm Audrey as the physical-care parent as to both children. We modify visitation with Keenan to Tuesday overnights and alternating weekends, as Audrey requested at the district court. We decline to award appellate attorney fees.

**AFFIRMED AS MODIFIED.**