**In re the MARRIAGE OF Judith Ann SCOTT and Michael Joseph Scott,**

**Upon the Petition of Judith Ann Scott, n/k/a Judith Ann Young, Appellee,**

**And Concerning Michael Joseph Scott, Appellant.**

No. 89–1122.

Court of Appeals of Iowa.

March 27, 1990.

Annette J. Scieszinski of Scieszinski & Owens, Albia, for appellant.

Greg A. Life, Oskaloosa, for appellee.

Heard by DONIELSON, P.J., and SACKETT and HABHAB, JJ.

DONIELSON, Presiding Judge.

Michael Scott and Judy Scott were married on December 31, 1979. Their daughter, Anna Marie, was born July 4, 1981. The parties separated in November 1984,

and a dissolution decree was entered on January 7, 1986.

The decree awarded the parties joint custody and placed Anna Marie in the physical care of Judy. Michael was awarded weekend, holiday, and summer visitation. The decree specifically provided:

> In the event Petitioner leaves Appanoose County, Iowa with the intent to change her place of residence, the Court may, upon application of Respondent, and upon hearing, reconsider the child's physical custody and visitation rights of the parties.

In the fall of 1986, shortly before Anna Marie was to begin kindergarten, Judy moved to Virginia to seek employment and be near Wilbert Dale (Pete) Young. Judy left Anna Marie in Michael's care when she moved. It was her understanding Michael would care for her until she found a "suitable place" for Anna Marie in Virginia, and then Anna Marie would return to her care. At the hearing, Michael denied ever indicating to Judy that she should leave Anna Marie with him until she got settled in Virginia. He testified Judy did not tell him why she was not taking Anna Marie with her.[1]

Judy and Pete Young, who was in the process of obtaining a dissolution of his marriage, lived together in Virginia. In December of 1986, Pete and Judy rented a two-bedroom home. Pete Young's divorce was granted on February 21, 1988. He and Judy were married on December 2, 1988.

In October 1986, Judy obtained a job in Virginia at a Kentucky Fried Chicken restaurant. The position she held was similar to that she had held in a Kentucky Fried Chicken franchise prior to leaving Iowa.

Anna Marie resided with Michael from September 1986 until June 19, 1989, the last day of the district court's hearing on the modification matter. During this period, Anna Marie completed kindergarten, first grade, and second grade. Her mother had the following visitation with her:

December 1986: Judy visited Anna Marie for two weeks in Iowa

Summer 1987: Anna Marie spent approximately two months with Judy in Virginia

December 1987: Judy visited Anna Marie for two weeks at Christmas

Summer 1988: Anna Marie spent approximately two months with her mother in Virginia

The record also reveals Judy visited Anna Marie during her first communion and during the fall of 1988 when Judy returned to Iowa for a wedding. Judy called or wrote her daughter several times a week during their separation.

On December 23, 1988, Michael filed a petition seeking a modification of the custody and support provisions of the decree. He alleged Judy's assumption of a new residence in Virginia and his exercise of primary physical care for Anna Marie during the past two years constituted a material and substantial change in circumstances. Michael's petition also sought an immediate temporary custody order to ensure Anna Marie's continued residence with him until hearing was held on the modification matter.

A court order dated December 23, 1988, placed Anna Marie in Michael's custody and scheduled a temporary custody hearing by affidavits only for January 3, 1989. On January 3, 1989, the court held it was without authority to hold such a hearing and denied Michael's request for a temporary order.

A hearing on Michael's modification application was held on June 15th and June 19th, 1989. The court's findings of fact, conclusions of law, and directions for a modified decree were filed on June 23, 1989. The court found no substantial change in circumstances existed to warrant a change in Anna Marie's custody. It modified Michael's visitation rights denying him any visitation until the summer of 1990. A modified decree encompassing the court's ruling was filed on July 10, 1989.

---

**1.** In his brief, however, Michael states, "Both Mickey [Michael] and Judy conceded that they believed Judy was leaving Anna Marie in Michael's care only temporarily."

Michael has appealed from the district court's decision. He contends a substantial change in circumstances warranted modification of the custody and support provisions of the dissolution decree. He also argues the postponement of visitation with his daughter until the summer of 1990 was punitive and not in the best interests of the child.

■ I. *Scope of Review.* Our review of this equitable proceeding is de novo. Iowa R.App.P. 4. To change the custodial provisions of a dissolution decree, the applying party must establish by a preponderance of the evidence that conditions since the decree was entered have so materially and substantially changed that the children's best interests make it expedient to make the requested change. *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983). The party seeking to take custody from the other must prove an ability to minister more effectively to the children's well being. *Id.* This burden stems from the principle that once custody of a child has been fixed, it should be disturbed only for the most cogent reasons. *In re Marriage of Mikelson*, 299 N.W.2d 670, 671 (Iowa 1980).

■ II. *Custody.* To establish that conditions since the decree was entered have so materially and substantially changed that a child's best interests make it expedient to make the requested change, a party must prove the following:

1) The changed circumstances must not have been contemplated by the court when the decree was entered;

2) The circumstances must be more or less permanent, not temporary;

3) The circumstances must relate to the welfare of the child; and

4) The parent seeking to take custody from the other must prove an ability to minister more effectively to the child's well being.

*Frederici*, 338 N.W.2d at 158.

From our review of the record, it is apparent Michael has proven Judy's decision to move to Virginia and leave Anna Marie in Michael's primary care for over two years constitutes a substantial change in circumstances warranting the placement of Anna Marie in his custodial care. Judy's decision to leave Iowa was not in the contemplation of the trial court when it awarded her custody of Anna Marie. The court specifically left open the possibility of review of the custody provisions when it included a clause in the decree allowing Michael to seek reconsideration of the custody determination if Judy left Appanoose County. Michael's assumption of Anna Marie's primary physical care was more or less permanent and not temporary in nature. It is clear the issue of Anna Marie's residence relates to her welfare, and Michael has established an ability to minister more effectively to Anna Marie's needs and well being.

■ While a number of cases have concluded a change in the custodial parent's geographical location is not alone justification for a change of custody, *In re Marriage of Day*, 314 N.W.2d 416, 420 (Iowa 1982); *In re Marriage of Behn*, 416 N.W.2d 100, 101 (Iowa App.1987), it is a factor to consider in determining which parental environment will provide the most stability and security to the children. *In re Marriage of Grabill*, 414 N.W.2d 852, 854 (Iowa App.1987). It appears the cases in which a custodial parent's move does not constitute a substantial change in circumstances are those in which the custodial parent moves and the children move with the parent. *See Frederici*, 338 N.W.2d at 160; *Day*, 314 N.W.2d at 420; *Behn*, 416 N.W.2d at 101. The general import of these cases is while stability is important in a child's life, stability can be nurtured as much by leaving children with the same custodial parent as by leaving them in the same neighborhood. *Behn*, 416 N.W.2d at 101.

In this case, Judy did not merely change her place of residence, she moved to Virginia and left Anna Marie in Iowa in Michael's care. Judy testified she intended to reassume Anna Marie's care as soon as she was self-supporting. Despite obtaining employment in October 1986 and a residence in December 1986, Judy did not in-

form Michael of her intention to resume the full-time care of Anna Marie until December 1988. Judy testified she realized she had made a mistake in leaving Anna Marie in December 1986, but she did not seek to resume Anna Marie's care at that time. Judy's concern about her relationship with Pete Young seemed to be a controlling factor in her decision, as can be seen from her testimony:

> Well, like I said before, in 1986, December of 1986, I realized that I made a mistake. And I voiced my opinion about it. And I was just kind of—it was kind of hard for me at that time to take Anna Marie out of school. I wanted to be—my relationship with Pete and I, I wanted to make sure that things were going right and that I was going to be happy and this is where I wanted to be and things would be very good for all three of us as a family.

Judy's decision to relocate to another state and leave Anna Marie in Michael's care for two and one-half years constitutes a substantial change in circumstances. This case is similar to the circumstances found in *In re Marriage of Green*, 417 N.W.2d 252 (Iowa App.1987). In *Green*, the mother was awarded physical care of the parties' daughters, but the children resided with their father during the 1984–85 and 1985–86 school years. In that case we held the mother's move to a residence 150 miles away and the children's stable environment with their father constituted a substantial change of circumstances which warranted placement of the children in their father's physical care. *Green*, 417 N.W.2d at 253. We must now analyze this case to determine if the substantial change in circumstances in this case is such that Anna Marie's best interests make it expedient to make the requested change.

Michael has established himself as a good father to Anna Marie. After she began to reside with him, he rearranged his work schedule and made accommodations in his home and work place to attend to her needs. He attended Anna Marie's school

functions and enrolled her in dance, religion, and remedial reading classes. He encouraged and facilitated Anna Marie's contact with Judy and Judy's family, who lived in the Centerville area.

Michael assumed and performed the physical care responsibilities from September 1986 until June 1989. Judy's communication with Anna Marie by telephone and letters and her holiday and summer visitations were much in the form of a noncustodial parent exercising visitation. For several years, Michael and Judy had each essentially adopted the parental roles the dissolution decree had assigned to the other spouse.

In this case, modification of the child custody provisions preserves rather than disrupts the stability and continuity established in Anna Marie's life. While Judy has proven she has a good noncustodial relationship with Anna Marie, it appears she did not take seriously her court-ordered responsibilities as demonstrated by the lengthy period which occurred before she decided it was time to resume full care for Anna Marie. Despite her attainment of a job and home in 1986, Judy waited until she had married Pete Young in December 1988 before she sought to return Anna Marie to her care.

■ Once fixed, child custody should not be disturbed except for the most cogent of reasons. *Frederici*, 338 N.W.2d at 158. Judy consented to Michael's full-time care of Anna Marie in 1986, and a child's need for stability and continuity lead this court to conclude Anna Marie's best interests are best served by modifying the decree and awarding her primary physical care to Michael.[2]

The district court's findings contain at least one mistake and characterize Michael's behavior and motives in ways not supported by the evidence. The district court found Judy and Michael had agreed in the fall of 1986 to his temporary care of Anna Marie and that this agreement was reduced to writing. We do not find this to

---

**2.** Because our decision places Anna Marie in Michael's primary care, we need not address the propriety of the trial court's visitation provisions.

be reflected in the record. Judy testified their "agreement" was verbal in nature.

Attached to Judy's affidavit regarding the temporary custody hearing is an unsigned agreement regarding Judy's decision to leave Anna Marie in Michael's temporary care. It appears Judy made no record at the modification hearing regarding the agreement or any attempts to have Michael sign it.

It appears an agreement regarding Michael's care of Anna Marie was signed in 1987. The testimony of the parties reveals a dispute or misunderstanding arose with regard to Judy's right to take Anna Marie out of the state to visit with her mother in Virginia in June 1987. Each party consulted an attorney and eventually Judy signed an agreement presented by Michael regarding his right to have Anna Marie in his custody during the school year. This agreement was not admitted into evidence at the modification hearing, though a copy of it was attached to Judy's affidavit regarding the temporary custody hearing.

From our review of the evidence, we cannot find, as the trial court apparently did, that Michael misled or manipulated Judy with regard to leaving Anna Marie in his care or in executing the 1987 agreement. Judy testified she consulted an attorney regarding the controversy over her 1987 visitation. We do not find the trial court's assessment of Michael's conduct and motives to have been accurate. We recognize that we give weight to the fact findings of the trial court when considering the credibility of witnesses, Iowa R.App.P. 14(f)(7), but the record does not support the suspicious and deceitful motives the district court attributed to Michael.

The district court stated Michael characterized Judy's conduct as "abandonment." No evidence exists for such a harsh conclusion. Michael encouraged Judy's contacts with Anna Marie, and he sought the modification action to ensure stability in Anna Marie's life. Similarly, the trial court suggests Michael's actions were motivated by his financial interests. No evidence exists to support this view. Judy testified Michael paid his child support obligation in full prior to his assumption of full-time care for Anna Marie, and she indicated she believed the 1987 agreement had relieved Michael of any obligation to pay support while Anna Marie was in his care.

Finally, it appears inconsistent for the trial court to denounce Michael's lack of a "clear, moral sense of propriety" for living with a woman "without the benefit of clergy," when Judy resided for over two years in Virginia with a married man whose divorce was not yet final. Anna Marie resided with both of her parents during their cohabitation with others, and no evidence was presented demonstrating she suffered any harm as a result.

 III. *Visitation and Child Support.* Michael's lack of financial data in the record makes a remand necessary for a determination of the parties' respective child support obligations. Upon remand, the court shall also make visitation provisions to allow Judy summer and holiday visitation with her daughter. The costs of transportation for the visits shall be divided equally between the parties. The costs of this appellate action are assessed to Judy.

MODIFIED AND REMANDED.