**IN THE COURT OF APPEALS OF IOWA**

No. 21-1663
Filed June 15, 2022

**IN RE THE MARRIAGE OF GARRY LEE MATTIX, JR.
AND AMY NICOLE MATTIX**

**Upon the Petition of
GARRY LEE MATTIX, JR.,**
        Petitioner-Appellant/Cross-Appellee,

**And Concerning
AMY NICOLE MATTIX,**
        Respondent-Appellee/Cross-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Jeffrey Farrell, Judge.


        Garry Mattix appeals and Amy Mattix cross-appeals the district court's

modification of their dissolution decree.   **REVERSED IN PART ON APPEAL;**

**REVERSED IN PART AND MODIFIED IN PART ON CROSS-APPEAL.**


        Billy J. Mallory and Matt O'Hollearn of Brick Gentry, P.C., West Des Moines,

for appellant/cross-appellee.

        Katie M. Naset of Hope Law Firm & Associates, P.C., West Des Moines, for

appellee/cross-appellant..


        Considered by Bower, C.J., and Schumacher and Ahlers, JJ.

**BOWER, Chief Judge.**

Garry Mattix appeals and Amy Mattix cross-appeals the district court's modification of the physical-care and child-support provisions of their dissolution decree. We reverse the modification of physical care because Garry failed to prove the requisite change of circumstances and ability to provide superior parenting. We modify the increased child-support obligation in light of the physical-care ruling, and we reverse the ruling requiring Garry to pay extracurricular activity expenses. We find no abuse of discretion in the denial of retroactive child support modification. We affirm the court's order that Garry pay Amy's trial attorney fees, and we order Garry to pay $7000 toward Amy's appellate attorney fees.

**I. Background Facts.**

Garry and Amy were married in May 2004. They share one child together, H.M. In 2009, Garry filed a petition for dissolution. The parties' settlement agreement was adopted by the court, and a stipulated decree was filed on February 17, 2010. The decree granted joint legal custody, physical care was placed with Amy, and Garry received liberal visitation. If the parties could not otherwise agree, Garry's parenting time was to be on Tuesday and Thursday nights and every other weekend from Friday at 5:00 p.m. through Sunday at 5:00 p.m.[1] The decree also set out a vacation and holiday schedule. Garry's child-support obligation was set at $500 per month based on an income of $60,000 per year as a self-employed trucker and Amy's income of $51,843 per year.

---

[1] Essentially, the custodial schedule provided Amy with eight overnights and Garry with six overnights each two-week period.

On January 16, 2020, Garry filed a petition to modify physical care and support. Garry claimed a material and substantial change of circumstances had occurred because then fourteen-year-old H.M. had been "primarily residing" with him. Garry asked the court to grant him physical care, set a visitation schedule, award him past and future child support, and assess Amy the costs of the action (including attorney fees).

Amy filed an answer seeking dismissal of Garry's petition, modification of child support consistent with the child-support guidelines, and an order that Garry pay Amy's attorney fees.

After receiving exhibits and hearing the testimony of the parties, other witnesses, and the child, the trial court wrote an extensive and thoughtful ruling. Significantly, the court made these findings:

> This modification action is somewhat unique. There are absolutely no facts showing that Amy has done anything to jeopardize the child's best interests. In fact, Garry testified that Amy is a great mother. Likewise, Amy has not taken some action that has interfered with Garry's parenting time, such as a change in residence. In fact, Amy has lived in the same home for the past fifteen years.
>
> The modification request is based solely on the fact that H.M. has been spending more time at Garry's home than Amy's home over the past two to three years. This has occurred for multiple reasons. First, the parents are exceedingly willing to let the child do what he wants. If H.M. wants to spend more time at Garry's home, both parents have been and continue to be willing to let him do that. Second, the parents have worked together well to allow the child to move between their homes notwithstanding the schedule set forth in the decree. Third, as the child has got[ten] older, he has enjoyed spending more time with his father because they have shared interests, such as hunting. Finally, Garry's residence has considerably more amenities and more privacy, which make it a more attractive location than Amy's home.
>
> In light of the cooperation between parents on letting H.M. stay where he wants, it seems surprising that the matter found its

way into court. After all, the mantra when deciding child custody is to provide for the best interests of the child. Garry agrees that Amy is a good mother and she does not interfere with his parenting time. There was no evidence presented to show that a court-ordered modification to the dissolution decree would advance the best interests of the child.

Later in the court's ruling, the court also observed:

Based on the legal standards set [forth] above, there seems to be no avenue for Garry to meet his heavy burden to show a modification of custody. Garry did not show that he can offer superior care than Amy. The only real reason offered in favor of modifying custody is that H.M. likes spending more time at Garry's home because he has more things to do there. I do not question the truth of this reason. It makes sense. H.M. and Garry have common interests. Garry has bought a very nice residence, built a barn, and purchased animals that feed into H.M.'s interests.

Nonetheless, the court *did* modify physical care, placing the child in the parents' shared care. And the court modified Garry's child-support obligation to $845.88 per month.[2] The court also ordered Garry to pay his own attorney fees as well as Amy's.

---

[2] Garry does not argue the court's findings as to his income are inaccurate. We emphasize these findings of the trial court:

A court-ordered change in custody would impact child support, and that is the true purpose for this proceeding. Garry has been obstructive [in the manner he makes] child support payments since the beginning of his court-ordered obligation. . . .

. . . .

Garry was not upfront about his income. He listed his income on his financial affidavit and child support worksheet at $76,091.75 from GNA Trucking, LLC (GNA), which is a company he owns. However, his savings and purchases listed in the prior paragraph clearly show greater income. GNA's 2018 tax return showed a net business income of $193,791. If the business income is added to Garry's salary, his total income would be $269,791. Garry reported $20,000 in income per month on his 2020 home loan application, which is close to the amount of income realized by Garry and GNA in 2018. Garry also owns a roofing company that he described as cash flowing but had not shown a profit on a tax return yet. However,

Garry appeals, arguing the court should have placed the child in his physical care since the child was primarily residing with him. And if physical care is modified, Garry asserts child support should be recalculated because "Garry is providing for more of the child's basic financial needs including shelter, food, water, and utilities." He asserts he should be awarded retroactive child support as well. In addition, Garry objects to the court ordering the parties to share the child's extracurricular expenses—with him paying seventy-five percent—because neither party asked the court to address the issue. Finally, Garry contends the court abused its discretion in ordering him to pay Amy's attorney fees.

On cross-appeal, Amy contends the court erred in modifying physical care. She asserts the court properly modified child support but it should be based on her having physical care and should have been retroactive to May 13, 2020. She seeks an award of appellate attorney fees. Garry filed no responsive brief.

**II. Scope and Standard of Review.**

"'Petitions to modify the physical care provisions of a divorce decree lie in equity.' Thus, we review the district court's decision de novo. Though we make our own findings of fact, we give weight to the district court's findings." *In re Marriage of Harris*, 877 N.W.2d 434, 440 (Iowa 2016) (internal citations omitted).

We review an award of attorney fees for an abuse of discretion. *In re Marriage of Kimbro*, 826 N.W.2d 696, 698 (Iowa 2013).

---

he did not provide any personal or business tax returns for 2019 or 2020, so his income may be greater now that his roofing business is off the ground. These figures show that Garry vastly understated his income on his financial documents.

**III. Discussion.**

*Physical care.* Familiar principles are at play. A party seeking modification of a dissolution decree "faces a heavy burden, because once custody of a child has been fixed, 'it should be disturbed only for the most cogent reasons.'" *Harris*, 877 N.W.2d at 440 (citation omitted). To justify modification, the movant "must prove by a preponderance of the evidence a substantial change in circumstances occurred after the decree was entered." *Id.* "The changed circumstances affecting the welfare of [the] child[] and justifying modification of a decree 'must not have been contemplated by the court when the decree was entered, and they must be more or less permanent, not temporary.'" *Id.* (citation omitted). Moreover, the movant "must also prove a superior ability to minister to the needs of the child[]." *Id.*

Garry asserts the child's change of time spent at his residence rather than Amy's house is a substantial change of circumstances warranting modification of the decree and placing H.M. in his physical care.[3] He argues:

> The undisputed evidence showed that, for at least the two years preceding the trial, the child was spending over double the amount of time living with Garry than Amy. Specifically, from July 2019 until the date of trial in August 2021, the child was in Garry's physical care 66% of the time, Amy's 24% of the time, and with friends, family, or other caregivers 10% of the time. There were also significant stretches of time where the child was not in Amy's care at all. Notably, after the filing of the Petition to Modify, Amy had a [fifty-four]-day span in March, April, and May of 2020, and another [twenty-nine]-day span leading up to the trial date where she did not exercise any visitation or provide any physical care for the child.

---

[3] We cannot say the decretal court would *not* have contemplated that H.M. would likely spend more time with his father as he got older.

Garry's brief ignores a number of important points. Beginning in March 2020, COVID-19 created health consequences for vulnerable people—including Amy's parents and H.M.'s younger siblings. Garry refused to take the health risks seriously or take precautions—such as masking, physical distancing, and vaccinating (when that option became available)—to reduce the risk to Amy's important others, himself, or H.M. H.M. adopted Garry's cavalier approach and continued to socialize with peers despite Amy's requests for caution. This attitude led to H.M. spending several weeks at Garry's home in 2020.

Also, Garry has provided a number of incentives any teenage child would find hard to resist. He purchased a large home in the country where he and H.M. participate in many outdoor activities together. The child has his own bedroom where he does not have to share space with his younger siblings, as he does at Amy's home.[4] Garry put up a barn and purchased a number of animals the child enjoys caring for. He provided the child with a vehicle (the first one was owned by the father's business) and allowed the child to drive to school—but only if the child slept at Garry's home. Garry also allows the child to avoid attending school, resulting in notices of truancy.

"The parent awarded physical care maintains the primary residence and has the right to determine the myriad of details associated with routine living, including such things as what clothes the child[] wear, when they go to bed, with

---

[4] As Amy testified:

> I totally get it that he wants to be there. There's a lot more freedom. There's a lot more things for him to do over there, frankly, than there is here, and I understand that. There's also not a younger brother and sister, you know, up his rear-end all the time.

whom they associate or date, etc." *In re Marriage of Hansen*, 733 N.W.2d 683, 691 (Iowa 2007). Where the fifteen-year-old boy "primarily resides" does not carry much weight under the circumstances presented here. As physical custodian, Amy has "the right and responsibility to maintain a home for the minor child and provide for the routine care of the child." Iowa Code § 598.1(7) (2020). That right and responsibility does not change when the child sleeps elsewhere.

Amy testified that "wherever [H.M.] lays his head for the night, [she's] still doing the actual majority of the parenting, the school contacts, the sports, the appointments, the doctors, you know, every day." The record supports her testimony, and we adopt the trial court's findings:

> H.M. missed twenty days of school last year while staying primarily at Garry's home. Not only did Garry fail to force H.M. to go to school, Garry often instigating the absences by taking H.M. hunting and on vacations on school days. Garry condoned H.M. driving beyond his restricted driver's permit. While Garry trumpets that H.M. is learning responsibility raising animals, he does not force H.M. to take responsibility in the other areas referenced above. "Responsible" is defined as being "able to answer for one's conduct and obligations." H.M. is not responsible to his obligation to attend class. He is not responsible to his obligation to follow the law as to driving. He has shown he is not always responsible to his obligation to treat his mother with respect when he disagrees with her. Responsibility is learned when a person abides by obligations that they do not want to do, as opposed to things that the person enjoys doing.
>
> In contrast, Amy conducts essentially all communications with the school and most of H.M.'s activities. She monitors H.M.'s school progress. Amy pays for registration and fees for school and sports while Garry focuses on nonessential items such as out of state baseball tournaments, bats, farm animals, and hunting clothing. Amy sets medical appointments. Amy could do a better job holding H.M. accountable, but these parents have given H.M. so much freedom to do what he wants, it is going to be more difficult now that he is sixteen. Still, Amy is performing many of the tasks that need to be done on a day-to-day basis. Garry showed no interest in taking on these tasks. Based on the established legal standards, the petition for modification should be denied.

The trial court modified physical care *despite* finding a change was not in the child's best interests and Garry had not proved a superior ability to minister to the needs of the child. This was an error.

This court has previously stated:

> [T]here may be a point at which one parent has been the de facto physical caretaker for an extended period of time such that the decree should be modified to reflect that reality. That is not this case. In the typical de facto care claim, the parent granted physical care has abandoned the child to the care of the other parent for a long period of time. *See, e.g., In re Marriage of Spears*, 529 N.W.2d 229, 229 (Iowa Ct. App. 1994) (granting modification where mother left the area); *In re Marriage of Scott*, 457 N.W.2d 29, 32 (Iowa Ct. App. 1990) (granting modification where mother moved to another state and left daughter in father's care for two years); *In re Marriage of Green*, 417 N.W.2d 252, 252–53 (Iowa Ct. App. 1987) (granting modification where custodial mother moved 150 miles away and left children with the father for two years). This case is more analogous to *In re Marriage of Caldwell*, No. 06–1369, 2007 WL 912124, at *2 (Iowa Ct. App. Mar. 28, 2007). In *Caldwell*, the father had physical care of the children but granted the mother liberal visitation due to work schedules. *See Caldwell*, 2007 WL 912124, at *1. The mother argued there had been a de facto transfer of primary physical care. The court rejected the claim, concluding the father was merely granting more visitation to the mother than was required in the decree while also providing daily care for the children. *See id.* at *2. The same rationale applies here.

*In re Marriage of Brus*, No. 14-1722, 2015 WL 4642535, at *3 (Iowa Ct. App. Aug. 5, 2015).

The trial court found Garry's "true purpose for this proceeding" was to change his child-support obligation. The court noted child-support guidelines would allow consideration for extraordinary visitation but limited that credit. The court concluded "the [guideline] rules insinuate that physical care should be deemed with the parent who has the child the majority of the nights." The court

thus modified custody based on its interpretation of the support guidelines. We cannot agree with the court's reasoning.

Our case law regarding the modification of physical care is clear. *See Harris*, 877 N.W.2d at 440. A modification is to occur "only for the most cogent reasons."[5] *Id.* Garry's incentives and Amy's willingness to allow H.M. to spend more time with his father are not the most cogent reasons. Garry did not prove the requisites for modification, and we therefore reverse the court's ruling with respect to physical care. Physical care remains with Amy.[6]

*Child support.* Garry's appeal of the court's modification of child support is premised on his claim the child should be in his physical care. Because we have rejected this premise, we do not address his argument for support modification further.

Iowa Code section 598.21C(2)(a) provides, "[A] substantial change of circumstances exists when the court order for child support varies by ten percent or more from the amount which would be due pursuant to the most current child

---

[5] "Cogent" means "appealing forcibly to the mind or reason: convincing." *Cogent*, Merriam-Webster, https://www.merriam-webster.com/dictionary/cogent (last visited June 1, 2022).

[6] When parents with children separate, the courts are oftentimes required to make definitive rules for parents who cannot agree how to divide their time with the children. Under the decree, Garry has "liberal rights of visitation." These parents can agree to liberal visitation that is different than the court's decretal schedule. *See In re Marriage of Heiar*, 954 N.W.2d 464, 472 (Iowa Ct. App. 2020) ('When two good parents are involved, the physical care parent—with the best interests of the children at the forefront—knows open, flexible visitation generally benefits the children. We affirm the visitation schedule in the decree but emphasize that these are minimum guidelines and parents can certainly agree to expand time beyond what is ordered."). However, the court cannot disregard the legal requisites for modification.

support guidelines." Amy has asserted a claim for modification of child support based on a change of circumstances. The district court "use[d] Amy's child support guidelines worksheet for purposes of projecting income for each parent." The court then filed its own guidelines worksheet based on its finding of shared care. It ordered an increase in Garry's child support and determined the new amount would begin on the first of the month following filing of its decision.

Amy asserts that because modification of care was not proved, Garry's child support under the guidelines should be $1295.39 per month. Garry has not refuted this calculation. Because we agree it was error to modify the physical care provision of the decree and that there is a substantial change of circumstances to support modification of the support obligation, we modify Garry's child support to $1295.39 per month.

Amy asserts the modification should be retroactive to May 13, 2020—three months following notice of her counterclaim for modification of child support. Iowa Code section 598.21C(5) states that child support "*may* be retroactively modified only from three months after the date the notice of the pending petition for modification is served on the opposing party." (Emphasis added.) "Making a support award retroactive is permissible, not mandatory, and the district court has discretion in determining whether such retroactive application is warranted." *Christy v. Lenz*, 878 N.W.2d 461, 469 (Iowa Ct. App. 2016). Given that our review is for an abuse of discretion, we cannot say the district court abused its discretion here.

*Extracurricular activity expenses.* Garry objects to the court ordering the parents to pay a proportionate share of H.M.'s extracurricular activity expenses in relation to their incomes. The district court divided the extracurricular expenses based on its modification to shared care. Amy notes Iowa Court Rule 9.14(3) states that a child's expenses may be ordered pursuant to Iowa Code section 598.41(5)(a) as an obligation in addition to the joint physical care child support offset.

But we have agreed with Amy that the court erred in modifying custody. And we have modified Garry's child support based on Amy having physical care and crediting Garry with extraordinary visitation. "[E]xpenses for clothes, school supplies and recreation activities are considered under the guidelines, and a separate support order covering such expenses is improper absent a finding that the guidelines amount would be unjust or inappropriate." *In re Marriage of Gordon*, 540 N.W.2d 289, 292 (Iowa Ct. App. 1995); *see Heiar*, 954 N.W.2d at 473 (reversing the district court ruling requiring former spouse to pay extracurricular activity enrollment fees and required supplies in addition to his child-support obligation). We reverse the order to pay extracurricular activity expenses.

We note, though, the guidelines cover the types of financial obligations normally incurred by other children of similar ages. *See Heiar*, 954 N.W.2d at 473. Expenses that "would be significantly different than those normally incurred by other children of similar ages," however, "may justify an extraordinary expense clause, or a deviation from the guidelines." *See id.*

*Trial attorney fees.* Garry contends the district court abused its discretion in ordering him to pay all of Amy's attorney fees. Iowa Code section 598.36 provides, "In a proceeding for the modification of an order or decree under this chapter the court may award attorney fees to the prevailing party in an amount deemed reasonable by the court." The district court determined,

> Garry shall also be responsible for all of Amy's attorney fees. This action was totally unnecessary. These parties could have continued to go on as they have. Following trial, the result is that they will continue to go on as they have, but with a new child support order in place. Amy has a good job, but she has three children and little disposable income to pay an attorney. This action was entirely driven by Garry. She should not be responsible for those costs.

On appeal, Garry contends that because the court modified child custody, he was the prevailing party and thus should not be required to pay Amy's attorney fees. But we have concluded the modification of child custody was in error, we affirmed and further modified on Amy's request for modification of child support. Garry is not entitled to attorney fees under section 598.36; Amy is. We find no abuse of discretion.

*Appellate attorney fees.* "Appellate attorney fees are awarded upon our discretion and are not a matter of right." *Id.* "[W]e consider 'the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal.'" *In re Marriage of McDermott*, 827 N.W.2d 671, 687 (Iowa 2013) (citation omitted). Amy has requested $7500 for her appellate attorney fees. She was obligated to dispute the erroneous change of custody and defend the modification of child support. Garry was successful only on the issue of

extracurricular expenses.  We order Garry to pay $7000 toward Amy's appellate attorney fees.  Costs are assessed to Garry.

**REVERSED IN PART ON APPEAL; REVERSED IN PART AND MODIFIED IN PART ON CROSS-APPEAL.**