# IN THE COURT OF APPEALS OF IOWA

No. 22-1279
Filed November 2, 2022

**IN THE INTEREST OF J.L. and R.L.,**
**Minor Children,**

**J.L.-M., Father,**
     Appellant.

_____

Appeal from the Iowa District Court for Linn County, Carrie K. Bryner,

District Associate Judge.

A father appeals the termination of his parental rights. **AFFIRMED.**

John J. Bishop, Cedar Rapids, for appellant father.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee State.

Robin L. O'Brien Licht, Cedar Rapids, attorney and guardian ad litem for

minor children.

Considered by Bower, C.J., and Tabor and Greer, JJ.

**BOWER, Chief Judge.**

The father appeals the termination of his parental rights to J.L., born in May 2010, and R.L., born in August 2014.[1]  He challenges the juvenile court's findings that (1) the children could not be returned to him at the present time without risk of adjudicatory harm and (2) termination of his rights is in the best interests of the children.  We affirm.

We review termination-of-parental-rights proceedings de novo.  *See In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021).  We give weight to the trial court's findings of fact, especially when considering the credibility of witnesses, though we are not bound by them.  *See Christy v. Lenz*, 878 N.W.2d 461, 464 (Iowa Ct. App. 2016) (noting we give deference to the court's credibility determinations "because the trial court has firsthand opportunity to hear the evidence and view the witnesses" (citation omitted)).

The children and their older siblings were removed from the parents' custody in November 2019 due to concerns that both parents were using methamphetamine, methamphetamine was being sold out of the home, and there was domestic violence in the home.  R.L.'s and an older sibling's hair stat tests were positive for methamphetamine.  A November 27 hair stat test for the father was positive.  The children were adjudicated children in need of assistance (CINA)

---

[1] The petition to terminate originally concerned four children, all of whom are in the care of their aunt and her spouse.  The termination petition concerning the two eldest children was dismissed in accordance with the children's wishes and the recommendations of the department to health and human services (DHHS).

The mother's parental rights to the two youngest—J.L. and R.L.—were terminated; she does not appeal.

on December 6, 2019. DHHS provided case management and services to the family.

In July 2021, the children were moved from their initial relative placement to live with an aunt and her spouse.[2] The children feel safe and secure and are doing well in this placement.

On December 22, 2021, the State filed a petition to terminate the father's rights to J.L. and R.L. pursuant to Iowa Code section 232.116(1)(f) (2021).[3]

A January 26, 2022 progress report noted:

> [The father] will need to demonstrate his ability to have healthy adult relationship[s] and not allow [the mother] into his home and into his life when she is actively using drugs. [The father] will need to be honest about his relationship with [her]. [The father] will need to continue addressing his mental health ongoing and consistently.
> Due to [the father]'s positive drug test results, allowing [the mother] to reside in the home and the lack of progress in visitation, [DHHS] submitted a [termination-of-parental-rights] affidavit to the county attorney's office.

---

[2] An earlier-filed termination-of-parental-rights petition was dismissed. It was believed the relative placement interfered with reunification efforts, and service providers learned the children were mistreated in their care. A permanency review order date August 27, 2021 indicates the permanency goal remained reunification with a parent.

[3] Section 232.116(1)(f) allows a court to terminate parental rights if all the following have occurred:
> (1) The child is four years of age or older.
> (2) The child has been adjudicated a [CINA] pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

A permanency review hearing was held on February 3, and the court concluded reunification remained the goal of the juvenile proceedings.

On April 8, 2022, a review-hearing progress report to the court noted the father was employed; had housing and reliable transportation; was addressing substance-abuse concerns through treatment though he tested positive in August and September 2021; and that the father reported "he [was] addressing his mental health through therapy and medication management."  But the report also noted the father "continue[d] to lack insight into the trauma he has caused his children or how his behaviors impact the children."  The report noted that on April 3, the foster mother and one of the older children discovered the mother at the father's home.  The mother explained she had tested positive for COVID and needed somewhere to stay temporarily and the father had allowed her in.  On April 5, the DHHS case manager spoke with the father, who told the case manager he "struggles to tell [the mother] 'no' and needs help with setting boundaries with her."  This same issue has been of ongoing concern.

An April 15 guardian ad litem report recommended termination of parental rights as to J.L. and R.L.

A combined permanency review and termination hearing was held on April 15.  The court issued its ruling on July 25 terminating the father's parental rights.  The court summarized the case history and made these findings:

> [The father] continues to lack insight into the trauma he has caused his children or how his behaviors impact the children.  The court was struck throughout this case by the deflection by the father; the blame he has continued to place on others, especially the mother; his inappropriate behavior and comments to the [DHHS] workers and [service] providers; and his lack of acknowledgment that his actions have contributed in great part to the home being unsafe

for the children. Further, [the father] has exhibited extreme behaviors and actions of power and control with [the mother] and the children during this case. He has presented himself in an intimidating manner . . . . [He] obsessively contacted the children outside of the visit plan . . . .

During the father's testimony at trial, the court found the father to be both evasive and dishonest. He often placed blame on others for his actions or inactions. . . . Further, the court has observed the father throughout the case to be demeaning and act superior and controlling to the female professionals in this case. This was even observed in the first termination of parental rights trial with the interpreters. In that trial, there were two interpreters, a male and a female. Each time the female was interpreting, he interrupted her and continued to "scold" her for not translating to his liking. Although the court could not understand every word that was spoken in Spanish, it appeared to the court that the interpreters were doing their jobs in a very similar and equally professional manner. This attitude clearly lends credence to the allegations of domestic abuse and to [the mother's] claim that [the father] was controlling and would not allow her to use the phone or text others when she was in his home. It also concerns the court that the father would attempt to exert his dominance over the children in abusive ways . . . . *Overall, the court does not believe anything the father has asserted as to his sobriety, his relationship with [the mother] or his commitment to the necessary life changes that would make his home safe for the children to be returned to his care.*

(Emphasis added.)

The court also found "the child[ren]'s need for permanency, security, safety, physical and intellectual health dictates that it is in their best interest to have parental rights terminated." The father appeals.

Normally, we follow a three-step analysis when reviewing the termination of parental rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). We determine if a ground for termination under Iowa Code section 232.116(1) has been established, if the best-interests analysis of section 232.116(2) supports termination; and if an exception to termination in section 232.116(3) applies. *Id.* at 472–73. If any step is not contested, we need not address it. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa

2010).  With respect to whether the ground for termination was proved, the father contests only the court's finding that the children could not be returned to him at the time of the hearing.  *See* Iowa Code § 232.116(1)(f)(4); *In re A.M.,* 843 N.W.2d 100, 111 (Iowa 2014) (interpreting the statute's "at the present time" language to mean at the time of the termination hearing).

Reunification with the father was stymied by his repeated positive tests for methamphetamine through early September 2021,[4] his admitted inability to say no to the mother when she asked to be able to live with him even knowing she continued to use methamphetamine,[5] and his lack of insight as to how his actions placed the children at risk and affected their well-being and the chances of reunification.  The father's difficulty setting boundaries and his lack of insight jeopardize the children's safety if in his care.  The juvenile court's findings are fully supported by our review of the record and we adopt them here:

> [DHHS] and providing agencies have provided multiple services to the family, including, but not limited to, relative placement, mental health services, substance abuse services, Family Team Meetings, drug testing, family centered services to include solution based casework, CARE program, Waypoint services, BHIS, kinship navigator, and supervised visitation.  [DHHS] case manager, Laura Palumbo, testified that termination of parental rights is in the children's best interest. . . .  Ms. Palumbo could not recommend that the children be safely placed with [the father] either.  She noted that he struggles setting boundaries and that she would [be] very concerned about people to whom he would expose his children.  As seen over the pendency of this case, he often allowed [the mother] to live in the home while she was still using, to the extent that he also tested positive indicating that he was also using with her.  He would need to put his children's needs above his own, and would need to take accountability for the trauma he has caused his children so that

---

[4] During a counseling session, the father stated his last day of methamphetamine use was in October 2021.

[5] At the time of the termination hearing, the mother had pleaded guilty to a federal drug offense and was soon to report to prison.

it does not continue to occur. Ms. Palumbo noted that [the father] often talks about how this case has impacted him, not the children.

On our de novo review, we conclude there is clear and convincing evidence to support termination of the father's parental rights under section 232.116(1)(f).

We also conclude the best-interests analysis of section 232.116(2) supports termination. "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *P.L.*, 778 N.W.2d at 41. "Time is a critical element," and once the statutory period for reunification has passed, "termination proceedings must be viewed with a sense of urgency." *In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000). Here, giving "primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the[ir] physical, mental, and emotional condition and needs," we conclude termination of the father's parental rights is in the children's best interests. Iowa Code § 232.116(2). The children have waited far more than the statutory period and still their father is unable to provide them a safe and stable home. They are healthy and comfortable with their current placement. We affirm.

**AFFIRMED.**