# IN THE COURT OF APPEALS OF IOWA

No. 24-0258
Filed February 5, 2025

IN RE THE MARRIAGE OF BLAIR PRICE
AND MATTHEW PRICE

Upon the Petition of
**BLAIR PRICE, n/k/a BLAIR RANDELL,**
        Petitioner-Appellee,

And Concerning
**MATTHEW PRICE,**
        Respondent-Appellant.

_____

        Appeal from the Iowa District Court for Polk County, Scott J. Beattie, Judge.


        A father appeals an order modifying his former wife's visitation schedule

with their now ten-year-old daughter. **AFFIRMED.**


        Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West

Des Moines, for appellant.

        Katie M. Naset of Hope Law Firm & Associates, P.C., West Des Moines, for

appellee.


        Considered by Tabor, C.J., and Ahlers and Sandy, JJ.

**TABOR, Chief Judge.**

This appeal challenges an order modifying a divorce decree to allow a mother more parenting time with her now ten-year-old daughter. The father, Matthew Price, contends his ex-wife, Blair Randell, did not show a material change in circumstances justifying the modification. He also argues the expanded visitation is not in their daughter's best interests. Because the record belies both points, we affirm the modification order.

## I.    Facts and Prior Proceedings

Matthew and Blair married in 2011. Their daughter, A.M.P., was born in 2014. They divorced five years later. Blair moved from the family home in Pleasant Hill to Ankeny, in northern Polk County. And Matthew moved to his father's house in Gilman, in eastern Marshall County. The distance between their new homes factored into the custody terms in their stipulated divorce decree.

In that stipulation, the parties agreed to joint legal custody of A.M.P. They also decided that Matthew would be A.M.P.'s "primary physical custodian" subject to Blair's "expanded and liberal visitation with [A.M.P.] as the parties agree." If the parties did not adopt a plan for expanded visitation, the stipulation allowed Blair to have parenting time every other weekend from 6:00 p.m. Friday to 6:00 p.m. Sunday during the school year, and "any other times as the parties may mutually agree."[1]

It turns out the parties seldom agreed. Blair described their coparenting relationship as "very contentious at times." She testified that only on "rare

---

[1] The decree also had a holiday schedule and provided Blair with twelve consecutive days with A.M.P. during summer break.

occasions" would Matt afford her expanded parenting time with A.M.P. Matthew gave a similar assessment, labelling his relationship with Blair as "oppositional." Yet by all accounts, A.M.P. is a happy, well-adjusted child. She excels in school, is fascinated by outer space, and wants to work for NASA when she grows up.

In November 2022, Blair petitioned to modify the visitation schedule. She alleged that since their 2019 divorce, there had been "a substantial change in circumstances warranting modification of the stipulation and decree." She noted that Matthew had relocated from Gilman to Ames. That move changed the commute time between their homes from roughly seventy to forty minutes. Blair also alleged that Matthew "makes unilateral joint legal custody decisions" without discussing them with her. And Blair asserted that Matthew and his new wife were "disparaging" toward her and failed to support her relationship with A.M.P.[2] Finally, Blair noted that the parties' incomes had changed, warranting a modification of her child support obligation.

Since the divorce, both parents have remarried. And A.M.P. has stepsiblings in both households. Matthew testified that A.M.P. has an especially close relationship with his eleven-year-old stepdaughter. Meanwhile, Blair testified that her husband and his children would like to spend more time with A.M.P. To their credit, both parents acknowledged that A.M.P. is safe and well-cared for in each household.

---

[2] At the hearing on her modification petition, Blair clarified that Matthew did not "speak negatively" about her to their daughter and was generally supportive of her relationship with A.M.P. But Blair was critical of his attitude: "I think that he feels that he has the ultimate say in whatever [A.M.P.] does and my opinion doesn't matter much."

Beyond their remarriages, both parents have new jobs. Matthew works as a high school science teacher at BCLUW High School in Conrad, about an hour from his home in Ames. At the time of the dissolution, he had been working part time at Target. Blair switched from being the office manager for a Des Moines law firm to being the human resources director for a company specializing in oil changes headquartered in Ankeny. She testified that her new job allows her more flexibility—including work from home—than her previous position. Her husband also testified that his position at Principal Financial Group allows him to work regularly from home; "[if] there's an appointment or an activity, there's a ton of flexibility there."

After hearing testimony from Matthew, Blair, and her husband, the district court granted the modification petition.[3] It found a material change in circumstances since the 2019 decree. Among those changes, the court listed the "shortened distance between the parties' homes" and the new flexibility in Blair's work schedule. The court also mentioned Matthew's failure to consult with Blair on "joint legal custodial matters" such as A.M.P.'s baptism and medical appointments.

As for A.M.P.'s best interests, the court concluded:

> The case law in Iowa is clear that liberal visitation is in a child's best interest as it maximizes physical and emotional contact with both parents. The court is not confident that the parties will be able to do that on their own. As such, the court finds it appropriate to afford Blair a more liberal and expansive parenting schedule with A.M.P.

---

[3] The court also considered the view of A.M.P.'s guardian ad litem, who joined in Blair's request for increased visitation.

The new schedule allowed Blair to have A.M.P. for six overnights out of every fourteen days during the school year and every other week during the summer. The modification order also included this right of first refusal: "In the event either party is unavailable to care for the child for a period of time consisting of an overnight or longer in duration, they will contact the other parent and offer them the first opportunity to care for the child."

Matthew appeals, arguing that Blair failed to show a material change in circumstances to justify modification of her visitation schedule or that the modification was in A.M.P.'s best interests. He also asks for attorney fees.

## II.     Scope and Standards of Review

"We review modifications of dissolution decrees de novo." *In re Marriage of Kisting*, 6 N.W.3d 326, 332 (Iowa Ct. App. 2024). While they are not binding, we give weight to the district court's findings of fact, especially on credibility determinations. *Id.* "This is because the trial court has a firsthand opportunity to hear the evidence and view the witnesses." *In re Marriage of Brown*, 778 N.W.2d 47, 50 (Iowa Ct. App. 2009). Despite our de novo review, we assess the district court's decision not to award attorney fees for an abuse of discretion. *See In re Marriage of Witten*, 672 N.W.2d 768, 784 (Iowa 2003).

## III.     Discussion

### A.  Visitation

### 1.  Material Change in Circumstances

Matthew contends that Blair did not meet her burden to show a material change in circumstances to warrant expanded visitation. He acknowledges the burden when seeking to change a visitation provision is less demanding than the

burden to change custodial terms in a decree. *See Brown*, 778 N.W.2d at 51–52 (noting distinction between *substantial* change and *material* change in circumstances); *see also Donovan v. Donovan*, 212 N.W.2d 451, 453 (Iowa 1973) (compared to modifying custody, "a much less extensive change of circumstances need be shown in visitation right cases"). But he claims that Blair failed to clear that lower hurdle.

We disagree with Matthew's contention. The significantly shorter commute between the parents' homes, combined with their different job demands, amounted to a material change in circumstances meriting reconsideration of the visitation schedule. As Blair notes in her appellee's brief, Matthew's move to Ames "cut the distance between the parties almost in half, to approximately 30–40 minutes, . . . equivalent to the time that [A.M.P.] spends on the bus each morning and afternoon when she is with [Matthew]." Likewise, a change of employment may serve as a material change in circumstances justifying modification of a visitation schedule. *See In re Marriage of Johnston*, No. 23-0329, 2024 WL 110282, at *3 (Iowa Ct. App. Jan. 10, 2024). The greater flexibility in Blair's new position juxtaposed with Matthew's more demanding schedule as a teacher (at a high school an hour from his home) were sound reasons to entertain Blair's modification petition.

What's more, we find support for the district court's decision to modify the visitation schedule based on Matthew's reluctance to accommodate Blair's requests for more time with A.M.P.—despite language welcoming such accommodations in the stipulated decree. *See Christy v. Lenz*, 878 N.W.2d 461, 464–65 (Iowa Ct. App. 2016). As the district court reasoned, expanding Blair's parenting time provides A.M.P. with "the opportunity for the maximum continuing

physical and emotional contact with both parents" that the legislature expected in drafting Iowa Code chapter 598 (2022). *In re Marriage of Gensley*, 777 N.W.2d 705, 717 (Iowa Ct. App. 2009) (quoting identical Iowa Code § 598.41(1)(a) (2005)).

### 2. Best Interests

Matthew next argues that the modification is not in A.M.P.'s best interests. He asserts that "a change in the schedule results in A.M.P. essentially being torn away from the community that she has lived in for years." We disagree. At the time of the 2023 trial, A.M.P. was in fourth grade, midway through her third year in the Gilbert school district. She went to preschool at Southeast Polk, kindergarten in East Marshall, and first grade in Ames. So she has been to three schools while in Matthew's physical care—and shows no signs of distress. Given that history, it's difficult to imagine that spending more overnights in her mother's home would be "dysregulating" to A.M.P., as Matthew claims. More on point, expanding Blair's visitation will not change A.M.P.'s school district. Blair testified that she planned to transport A.M.P. to her current school and ensure that she maintains her extracurricular activities.

But Matthew expresses concern about that transportation. He argues that the "windshield time" going back and forth between households is not quality time with her parents. At trial, "Matthew testified that he worried a change in schedule would be disruptive to A.M.P. and that she should not be forced to spend that much time in the car during the school week, missing out on alleged social opportunities and time with peers riding the bus." But the district court did not find him to be credible on that issue. The court calculated that A.M.P. spent roughly the same time commuting to school each day from Matthew's home as she would traveling

to her mother's home in Ankeny. As Blair notes in her brief, "Whether [A.M.P.] rides the bus to school, or Blair takes her to school, the time is the same, approximately forty-five minutes of transit." In our de novo review—but giving weight to the district court's credibility finding—we reject the notion that travel time required by the expanded visitation is not in A.M.P.'s best interests.

On top of travel, Matthew points out that A.M.P.'s new schedule results in "more transitions and interactions than ever before," which could be fraught given the conflict between the parents. But we are skeptical of this rationale for limiting Blair's visitation. Matthew can choose to be supportive of A.M.P. having more time with Blair, and he can work to ensure that the transitions go smoothly for the sake of their daughter. *See Christy*, 878 N.W.2d at 465 (encouraging parents to consider the best interests of the child and be flexible in adjusting visitation times).

Finally, Matthew carves out a separate argument challenging the district court's modification of their summer schedule. He contends that the week-on-week-off rotation is not in A.M.P.'s best interests. He points out that "as a teacher he has summers off and his time matches up with A.M.P.'s almost exactly." Blair counters that she and her husband have the flexibility in their jobs to be at home with A.M.P. during the summer. We are not convinced that Matthew's greater availability in the summer means the new schedule is not in A.M.P.'s best interests. Without the press of school commitments, the alternating weeks in the summer will allow A.M.P. quality time with both parents. *See In re Marriage of Thielges*, 623 N.W.2d 232, 239 (Iowa Ct. App. 2000) (noting goal of maximizing continuous physical and emotional contact with both parents). We also reject Matthew's

contention that the district court should have modified spring break visitation, which was assigned to Blair in the parties' stipulation.

And we believe that the right-of-first-refusal provision in the modification ruling will help ensure that A.M.P. spends more time in the care of one of her parents. But we realize the provision will require Matthew and Blair to cooperate. As we have done in other cases, "[w]e implore the parties to make good faith efforts in accommodating each other[']s needs, reasonable desires and schedules." *See In re Marriage of Stepp*, 485 N.W.2d 846, 850 (Iowa Ct. App. 1992). In sum, we find that Blair did show a material change in circumstances justifying expanded visitation and the new schedule serves A.M.P.'s best interests.

### B. Attorney Fees

In challenging the modification, Matthew contends that the district court abused its discretion in declining to order Blair to pay his trial attorney fees. But because Matthew was not the prevailing party, he was not entitled to fees under Iowa Code section 598.36. *See In re Marriage of Mueller*, 400 N.W.2d 86, 89 (Iowa Ct. App. 1986).

Finally, both parties seek appellate attorney fees. In mulling their requests, we consider whether the party resisting the modification petition was successful, whether the other party needed to defend the district court's decision on appeal, and their respective abilities to pay. *In re Marriage of Michael*, 839 N.W.2d 630, 639 (Iowa 2013). While Blair had to defend the modification ruling and prevailed in this appeal, she has the greater ability to pay. So after considering all relevant factors, we decline to award appellate attorney fees.

**AFFIRMED.**