**IN THE COURT OF APPEALS OF IOWA**

No. 24-0868
Filed March 19, 2025

**BRADLEY RAY PIEPER,**
　　　Petitioner-Appellee,

**vs.**

**AMANDA MARIE GABEL,**
　　　Respondent-Appellant.
_____


　　　Appeal from the Iowa District Court for Black Hawk County, Alan Heavens,

Judge.


　　　A mother appeals the child-custody determination placing the parties' minor

child in the father's physical care. **AFFIRMED.**


　　　Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West

Des Moines, for appellant.

　　　John J. Wood of Beecher, Field, Walker, Morris, Hoffman & Johnson, P.C.,

Waterloo, for appellee.


　　　Considered by Schumacher, P.J., and Badding and Chicchelly, JJ.

**CHICCHELLY, Judge.**

Amanda Gabel appeals the district court's child-custody determination, which placed the parties' child in Brad Pieper's physical care. Upon our de novo review, we affirm.

## I.    *Background Facts and Proceedings.*

Gabel and Pieper never married but were together for approximately eight years. They share one child, D.R.P., born in 2019. During their relationship, Gabel was a stay-at-home parent and Pieper worked. But when D.R.P. was one year old, Gabel suffered from a stroke, which seriously impaired her functioning and abilities. During this time, Pieper served as both the primary breadwinner and primary caregiver until Gabel recovered. Since then, Gabel has made substantial improvements in her health, especially in her speech and mobility. Although she does not currently work, Gabel receives disability income and expects this to continue.

In June 2022, Gabel traveled to Michigan with D.R.P. under the pretext of visiting family. But two weeks after arriving in Michigan, Gabel ended her relationship with Pieper and refused to return the child to Iowa despite Pieper's protests. Pieper petitioned the district court for joint legal custody and physical care. In response, Gabel agreed to joint legal custody but requested the child be placed in her physical care. Both parties also filed competing motions for temporary matters. In hers, Gabel alleged that Pieper was "emotionally and verbally abusive." Following a hearing on the motions, the court found that temporary shared physical care was in D.R.P.'s best interests, but because of the geographic distance between the parties, it ordered an alternating schedule in

which each parent had two consecutive weeks with the child. The district court did not find Gabel's allegations against Pieper to be wholly credible but nonetheless ordered him to complete an anger management course. Over the next year and a half until trial, the parties generally followed this schedule as ordered, and Pieper completed anger management programming.

While the dispute was pending in district court, Gabel suffered from a seizure while driving and lost consciousness on the side of the road. At trial, she testified that since this incident, she was prescribed a new medication to prevent further seizures. But Pieper still expressed concerns about Gabel's health based on her previous stroke and insulin-dependent diabetes, which had resulted in multiple episodes throughout their relationship.

Trial occurred in May 2024. Both parties requested physical care, and their testimonies were in direct conflict. Gabel testified that Pieper was an abusive partner and uninvolved parent. But Pieper and other witnesses painted him as a loving, attentive father. The district court ultimately granted Pieper's request for joint legal custody and physical care. Gabel appeals.

## II.    *Physical Care Determination.*

Gabel only challenges the court's physical-care determination. We review physical-care determinations de novo. *See Hensch v. Mysak*, 902 N.W.2d 822, 824 (Iowa Ct. App. 2017). While not binding on us, we do give weight to the court's fact findings, especially those considering the credibility of witnesses. Iowa R. App. P. 6.904(3)(g). "The objective of a physical care determination is to place the child[ ] in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *In re Marriage of*

*Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). To determine the best interests of D.R.P., we consider the factors from *In re Marriage of Winter*. 223 N.W.2d 165, 166–67 (Iowa 1974); *see also* Iowa Code §§ 598.41(3) (setting out the applicable factors in custody determinations), 600B.40(2) (directing the court to apply section 598.41(3) in non-dissolution custody cases). Gabel specifically challenges the court's consideration of her historical role as the primary caregiver and its finding that she was unable to support Pieper's relationship with D.R.P.

Gabel contends that the district court should have given her caregiving role more weight. But while we consider Gabel's role as the primary caregiver a significant factor, "it is not an overwhelming factor mandating that she be awarded physical care." *In re Marriage of Berning*, 745 N.W.2d 90, 93 (Iowa Ct. App. 2007). Instead, we consider whether the party requesting physical care has been an "active and interested parent since [the child's] birth." *Id.* Contrary to Gabel's arguments at trial, the court found that Pieper *was* an engaged parent. This was corroborated by several witnesses, who described Pieper and D.R.P.'s positive relationship and their touching reunion at the temporary matters hearing, in which D.R.P. "jumped in [her father's] arms and wouldn't let go." The court went on to say that "D.R.P. has a healthy and equal bond with both of her parents" and expressly found Gabel's "repeated" arguments that D.R.P. disliked her father were "not a credible claim." We find that Pieper has proven himself as a capable caregiver, both following Gabel's stroke and since the time of the temporary matters hearing, after which the court ordered the parties to share equal parenting time. We therefore do not find this factor to be as dispositive as Gabel contends. *See In re Marriage of Williams*, No. 16-1527, 2017 WL 2875392, at *3 (Iowa Ct.

App. July 6, 2017) (finding the "approximation principle" can be outweighed by other factors).

Gabel also challenges the court's finding that she was unable to support Pieper's relationship with D.R.P. *See* Iowa Code § 598.41(3)(e) (requiring the court to consider "[w]hether each parent can support the other parent's relationship with the child" as part of its child-custody determination). But most of her arguments criticize the court's fact-findings regarding her credibility, and we give great deference to such findings. *See In re Marriage of Heiar*, 954 N.W.2d 464, 469 (Iowa Ct. App. 2020) ("The trial court has the advantage of listening to and observing the parties and witnesses and is in a better position to weigh the credibility of witnesses."). Contrary to Gabel's challenges, the district court here expressly found "Pieper was much more credible" and that Gabel was "openly hostile towards Pieper." The court noted that, when asked whether Gabel had anything good to say about Pieper as a parent, she answered "no." The court then described the impact that Gabel's resentment had on their young child, especially in contrast with Pieper, who it found "has a more mature and less hostile approach towards furthering [Gabel's] relationship with D.R.P." While Gabel argues that she made significant efforts to include Pieper in parenting D.R.P., it is clear to us that the court did not find that argument credible. As an appellate court, while "we appreciate the interplay that occurs during a trial to cast aspersions on each side," "we were not there" at trial. *See id.* at 471. It is therefore not our role to re-evaluate the credibility of witnesses and substitute our judgment for that of the district court's. *See id.* As the court pointed out, Gabel removed D.R.P. from her father, made disparaging comments about Pieper at trial, and acted "bitter and immature,"

although Pieper also acted poorly at times. We similarly find that the record supports the court's finding that Gabel is unable to support Pieper's relationship with their child and will "likely . . . use an award of physical care as a weapon to undermine her daughter's relationship with her father."

Based on these findings, we agree with the district court's conclusion that granting Pieper physical care is in D.R.P.'s best interests. Gabel's historic role as caregiver does not weigh heavily in her favor when considered against the other factors. Specifically, we find that her inability to co-parent with Pieper does not convince us that she can provide "the environment most likely to bring [the child] to health." *Hansen*, 733 N.W.2d at 695; *accord In re Marriage of Shada*, No. 23-1912, 2024 WL 4222888, at *5 (Iowa Ct. App. Sept. 18, 2024) (collecting cases where the child was placed with the historical non-primary parent due to the primary parent's inability to support their relationship). Pieper, in contrast, is able to provide this environment while also allowing D.R.P. to have a relationship with both of her parents. Accordingly, we affirm.

### III. Appellate Attorney Fees.

Gabel also requests appellate attorney fees. An award of attorney fees is not a matter of right but is a matter of discretion. *See Christy v. Lenz*, 878 N.W.2d 461, 469 (Iowa Ct. App. 2016). "In determining whether to award appellate attorney fees, we consider the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *Id.* (citation omitted). While Pieper has more income than Gabel, he is the prevailing party. *See* Iowa Code § 600B.26. We therefore decline to award Gabel appellate attorney fees.

### IV.     Disposition.

Because Pieper having physical care is in D.R.P.'s best interests, we affirm.

**AFFIRMED.**